Daniel BIESE, the Checkered Flag Land and Building, Inc. and the Checkered Flag Sports Bar, Inc., Plaintiffs-Appellants,

v.

PARKER COATINGS, INC., Defendant-Third-Party Plaintiff-Respondent,

v.

Daniel BIESE, d/b/a Daniel Biese Construction Company, Third-Party Defendant.

Court of Appeals

*No. 98–1466. Submitted on briefs October 20, 1998.—Decided November 3, 1998.*

(Also reported in 588 N.W.2d 312.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Scott D. Metz* of *Krause, Metz & Snyder* of Appleton.

On behalf of the defendant-third-party-plaintiff-respondent, the cause was submitted on the brief of

*Rod A. Charnholm* and *Jeffrey T. DeMeuse* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J.  Daniel Biese, the Checkered Flag Land and Building Inc., and the Checkered Flag Sports Bar, Inc. (Biese) appeal a summary judgment dismissing their negligence action against Parker Coatings, Inc. Parker provided materials for the bar's epoxy floor, which did not perform as promised. Biese claims that the trial court erroneously applied the economic loss doctrine to bar its claim for the negligent provision of services. Because the predominant purpose of the underlying transaction between Parker and Biese was the sale of goods and any services were incidental, the economic loss doctrine applies to bar the negligence action. Therefore, we affirm the judgment.

## I. BACKGROUND

The underlying facts are essentially undisputed. In July of 1993, Biese contracted with A to Z Epoxy Coatings (Epoxy) to install an epoxy floor at the Checkered Flag Sports Bar. Parker supplied flooring materials to Epoxy, and Epoxy used these materials to install the floor in January and February of 1994 and guaranteed the floor's performance for one year. Unfortunately, the floor did not perform as promised, and Biese encountered problems the first day he used the floor. When attempts to correct the problems without reinstalling the entire floor were unsuccessful, Biese, Parker, and Epoxy met, and Parker and Epoxy agreed to redo the entire floor and provide all labor and materials free of charge. After Epoxy reinstalled the floor, Biese continued to experience problems with the floor

and thus filed a negligence action in March of 1996 alleging that Parker negligently provided defective flooring materials and/or incorrect and improper instructions, guidance, and advice to Epoxy for installation of its flooring materials. Biese sought damages for repair and replacement of the defective floor, lost profits, and damage to his business reputation.

In its decision granting Parker's motion for summary judgment, the trial court noted that without a claim of personal injury or physical harm to property other than the defective product itself, Biese's remedy was a breach of warranty claim, not a tort action. It further noted that although there was no privity between Parker and Biese, Wisconsin law supported the application of the economic loss doctrine in the absence of privity between the parties.[1] Biese appealed. Additional facts will be discussed as necessary.

## II. ANALYSIS

The issue is whether the economic loss doctrine bars a remote commercial purchaser's claim for negligent provision of services against the failed product's manufacturer. Whether the trial court properly granted Parker's motion for summary judgment on this issue is a question of law we review without deference to the trial court, *see Gaertner v. Holcka*, 219 Wis. 2d 436, 445–46, 580 N.W.2d 271, 275 (1998), but we nonetheless value a trial court's analysis. *M&I First Nat'l*

[1] Although the trial court did not cite *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 394, 401–02, 573 N.W.2d 842, 845–46 (1998), it correctly sets forth *Daanen & Janssen's* holding that the economic loss doctrine applies to solely economic losses even in the absence of privity between the parties.

21

*Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). In determining if the trial court properly granted summary judgment, we apply the same methodology as the trial court. *Id.* Because summary judgment methodology is well known,[2] we need not repeat it "except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing § 802.08(2), STATS.).

Biese characterizes the allegation in his complaint that Parker "was negligent in providing incorrect and improper instruction, guidance and advice to Epoxy" for the installation of its flooring materials as one for the negligent provision of services. He therefore reasons that under *Hap's Aerial Enters. v. General Aviation Corp.*, 173 Wis. 2d 459, 496 N.W.2d 680 (Ct. App. 1992), *overruled in part by Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 394, 416, 573 N.W.2d 842, 851–52 (1998),[3] the economic loss doctrine does not bar his claim. In contrast, Parker contends Biese is limited to a contract action because: (1) he has not alleged personal injury or physical harm to property other than the defective product itself; and (2) the predominant purpose of its transaction with Biese involved the sale of goods and any services were incidental. We agree with Parker and hold that the

---

[2] For a case describing summary judgment methodology, see *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 476–77 (1980).

[3] The court held that to "the extent that [*Hap's Aerial*] can be read as inconsistent with our decision here, [it] is expressly overruled." *Daanen & Janssen,* 216 Wis. 2d at 416, 573 N.W.2d at 852.

economic loss doctrine confines Biese's remedies to contract law.

"The economic loss doctrine is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely 'economic' in nature." *Daanen & Janssen*, 216 Wis. 2d at 399, 573 N.W.2d at 844–45 (citing *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 921, 437 N.W.2d 213, 217 (1989)). Economic loss includes both direct and consequential economic loss. *See Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 925–26, 471 N.W.2d 179, 181–82 (1991). Direct economic loss encompasses damage based on insufficient product value and may be measured by costs or repair and replacement. *Id.* at 926, 471 N.W.2d at 181–82; *see also Daanen & Janssen*, 216 Wis. 2d at 400, 573 N.W.2d at 845. Consequential economic damages are indirect losses such as lost profits from the inability to use the defective product. *Northridge*, 162 Wis. 2d at 926, 471 N.W.2d at 182. Simply put, economic loss is damage to a product itself or monetary loss caused by a defective product that does not cause personal injury or damage to other property. *See Daanen & Janssen*, 216 Wis. 2d at 401, 573 N.W.2d at 845.

In *Daanen & Janssen,* 216 Wis. 2d at 401–02, 573 N.W.2d at 845–46, our supreme court held that the economic loss doctrine bars a remote commercial purchaser of a product from recovering in tort from a manufacturer for solely economic losses, even in the absence of privity. Here, Biese is a remote commercial purchaser; Parker is a manufacturer; the parties are not in privity; Biese claims solely economic losses; and

23

Biese does not allege personal injury or physical harm to property other than the defective product itself. Under these circumstances, Biese's remedy for its defective product lies primarily in a breach of warranty claim, not tort. *See Northridge*, 162 Wis. 2d at 926, 471 N.W.2d at 182.

However, Biese filed an action against Parker alleging negligence, not a claim for breach of warranty. While his complaint alleges that Parker was negligent in two respects (providing a defective floor "and/or" negligently providing services), his sole argument is that the trial court erred by applying the economic loss doctrine to bar his claim for negligent provision of services. Although *Daanen & Janssen* provides that the economic loss doctrine bars a remote commercial purchaser of a product from recovering solely economic losses in tort against a manufacturer, our supreme court expressly did not address whether the doctrine applies with equal force to damages resulting from the provision of services. *Id.* at 415–16, 573 N.W.2d at 851–52.

Parker argues that under *Van Sistine v. Tollard*, 95 Wis. 2d 678, 684, 291 N.W.2d 636, 639 (Ct. App. 1980), and analogous federal case law, the economic loss doctrine bars Biese's claim for negligent provision of services because any services it provided to Biese were incidental to the sale of flooring materials. In *Van Sistine*, a homeowner and a siding contractor entered into two contracts for improvements to the homeowner's house. *Id.* at 684–85, 291 N.W.2d at 639. Adopting the reasoning of *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974), we applied the predominant purpose test to determine whether a mixed contract, one for both goods and services, between a non-com-

mercial party and a commercial party, was subject to the Uniform Commercial Code. To determine whether a mixed contract for goods and services is a sale of goods under the Uniform Commercial Code, ch. 402, STATS.,[4] the test is "whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of a service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)." *Van Sistine*, 95 Wis. 2d at 684, 291 N.W.2d at 639. In *Van Sistine*, we looked at the language of the contracts and concluded that the predominant purpose of the transaction was the furnishing of services with an incidental sale of materials because the contract's language was more in accord with services instead of sales.[5] *Id.* at 684–85, 291 N.W.2d at 639. Therefore, the transaction in *Van Sistine* was not subject to the U.C.C.

We later extended the predominant purpose test to transactions between commercial parties. In *Micro-Managers, Inc. v. Gregory*, 147 Wis. 2d 500, 508, 434 N.W.2d 97, 100 (Ct. App. 1988), we also applied the predominant purpose test to a commercial transaction between an engineering firm and a computer programming company. Based on billing statements reflecting that the charges for custom computer software were mostly for labor, we concluded that because the con-

---

[4] Section 402.102, STATS., provides that for the U.C.C. sales statute to apply, the transaction must be in "goods."

[5] The contract spoke in terms of "man-days," "development," "time," and "design," which we noted connote the rendition of services and not a sales transaction. *Micro-Managers, Inc. v. Gregory*, 147 Wis. 2d 500, 509, 434 N.W.2d 97, 100 (Ct. App. 1988).

tract was primarily one for services, the underlying transaction was not subject to the U.C.C. *See id.*

Although *Van Sistine* and *Micro-Managers* deal with transactions directly between sellers and consumers and not between remote commercial purchasers and a manufacturer as we have in our case, we conclude that the same general analysis is applicable. In cases involving mixed transactions for goods and services between a remote commercial purchaser and a manufacturer, even in the absence of privity, we will apply the predominant purpose test to the entire underlying transaction to determine if the economic loss doctrine bars a remote commercial purchaser's negligence claim against a manufacturer for solely economic losses. Because service is incidental to the sale of most commercial products, allowing a purchaser to recover solely economic loss for the negligent provision of services when the predominant purpose is a sale of goods would render the economic loss doctrine virtually meaningless and would allow a remote commercial purchaser who incidentally receives services from a manufacturer to circumvent the economic loss doctrine.

This extension also furthers the following three policies underlying the application of the economic loss doctrine to tort actions between commercial parties. *See Daanen & Janssen,* 216 Wis. 2d at 402–09, 573 N.W.2d at 846–49. First, looking at the predominant purpose of a mixed contract for goods and services maintains the fundamental distinction between tort and contract law. *See id.* at 402–04, 573 N.W.2d at 846. If a remote commercial purchaser's claim fails to implicate any tort law concerns with unreasonably dangerous products or public safety, then contract law protects the remote commercial purchaser's interests,

26

which arise from its "private-bargained-for agreement." *Id*. at 405–06, 573 N.W.2d at 847. Second, application of the economic loss doctrine protects commercial parties' freedom of contract. *Id*. at 407–08, 573 N.W.2d at 848. To extend tort law theories when the services are incidental would drown contract law "in a sea of tort." *See id*. at 409, 573 N.W.2d at 849. Third, application of the economic loss doctrine encourages the commercial purchaser to either assume, allocate, or insure against the risk of loss a defective product causes. *Id*. Limiting a remote commercial purchaser to contract remedies when the manufacturer's services are incidental and the predominant purpose is the sale of goods furthers this third policy consideration. *See id*.

Having decided to apply the predominant purpose test to mixed transactions of goods and services between manufacturers and remote commercial purchasers who are not in privity, this case thus turns on whether the predominant purpose of the transaction at issue was the sale of flooring materials or services. If the predominant purpose of the transaction between Parker and Biese is the sale of goods, with service being incidental, the economic loss doctrine bars Biese's negligence claim against Parker. *See Van Sistine,* 95 Wis. 2d at 684, 291 N.W.2d at 639; *see also Micro-Managers,* 147 Wis. 2d at 508, 434 N.W.2d at 100. We therefore examine the entire underlying transaction to determine if Biese is a commercial purchaser of a product, with service being incidental, or whether he is a purchaser of a service, with the sale of the product being incidental.

Here, Parker provided both goods and services;[6] therefore, the transaction was mixed. *See Van Sistine,*

[6] Biese cites no authority, gives no cite to the record, and submits no affidavit to support his assertion that Parker pro-

95 Wis. 2d at 684, 291 N.W.2d at 639. Although Biese's complaint is for negligence, his claim is that he did not get what he bargained for,[7] either at the time of the original installation or at reinstallation.[8] The purpose was to obtain the product which a third party (Epoxy) applied to the floor. All damages are economic loss as the result of a failed commercial product. Significantly, Biese's own expert offered the opinion that the floor failed because a chemical component was defective,[9] not because Parker negligently provided services.

In any event, any services that Parker negligently performed were incidental to supplying flooring materials; the main thrust was supplying flooring materials. Therefore, because the predominant purpose of the

vided incorrect and improper instructions, guidance, and advice for the installation of its flooring materials or that this alleged failure constitutes "services." For purposes of this appeal, we assume that Parker did provide these services.

[7] In his complaint, Biese alleges that the "floor did not perform as guaranteed for one year from acceptance."

[8] In its decision on summary judgment, the trial court noted that Parker and Biese were not in privity. Responding to Parker's arguments under *Van Sistine v. Tollard*, 95 Wis. 2d 678, 291 N.W.2d 636 (Ct. App. 1980), and *Daanen & Janssen*, Biese argues in his reply brief that while the original contract between Parker and Epoxy was for goods, that is, flooring materials, Parker's obligation to reinstall the floor under the agreement was not merely incidental. Looking at the entire transaction, however, any services were incidental.

[9] Rick Huntley, Biese's expert, concluded that:

Since the control sample of the 2175 provided to KTA by Parker cured to a hard film, and the infrared spectra differed significantly from the sample taken from the Checkered Flag floor, it is believed that the softness of the film is the result of a deficiency in the batch of Parker 2175 supplied for application at the Checkered Flag.

underlying transaction was the purchase of flooring materials with any services being incidental, the economic loss doctrine applies to bar the negligence action.[10]

[10] Given our analysis here, we agree with Parker that Biese's reliance on *Hap's Aerial* and the cases cited therein is misplaced. *Daanen & Janssen* held that *Hap's Aerial* was factually distinguishable and limited to its facts. *Daanen & Janssen*, 216 Wis. 2d at 414, 573 N.W.2d at 851. In *Hap's Aerial*, we held that the economic loss doctrine did not bar the plaintiff, a remote commercial purchaser of services, from recovering damages for its economic loss. *See Daanen & Janssen*, 216 Wis. 2d at 415, 573 N.W.2d at 851. *Hap's Aerial* alleged economic damages arose from the negligent provision of services, not from a defective product. *See Daanen & Janssen*, 216 Wis. 2d at 416, 573 N.W.2d at 851. Unlike in *Hap's Aerial,* then, the damages here did not result from the negligent provision of services. Further, because *A.E. Inv. Corp. v. Link Bldrs.*, 62 Wis. 2d 479, 214 N.W.2d 764 (1974), and *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983), *cited in Hap's Aerial*, also dealt with damages resulting from the negligent provision of services, they are likewise inapplicable to our analysis here.

In addition, Biese cites *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951), for the proposition that because his claim for negligent provision of services sounds in tort as well as contract, he may choose between "economic losses or tort damages." *Colton* is distinguishable from this case, however, because it was decided before Wisconsin adopted the economic loss doctrine and because the plaintiff in *Colton* suffered personal injury.

Additionally, our supreme court has explained the limits of *Colton,* stating that "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist." *Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983), *cited in Nelson v. Motor Tech, Inc.*, 158 Wis. 2d 647, 652, 462 N.W.2d 903, 905 (Ct. App. 1990). Parker had no common law duty to provide flooring materials

We also note that the policy considerations discussed above support the result here. First, because Biese's suit is based primarily on the floor's failure to perform as promised, his "negligence" suit sounds in contract, not tort. Allowing Biese to sue in tort when services were supplied incidentally would undermine the distinction between contract law and tort law that the economic loss doctrine seeks to preserve. *See Daanen & Janssen*, 216 Wis. 2d at 405–06, 573 N.W.2d at 847. Second, Biese contracted with Epoxy for the floor and received a one-year warranty. Allowing Biese to recover in tort would allow him to make an "end run around the bargain with tort law," rather than enforce the allocation of risk for which he bargained. *See id.* at 407–08, 573 N.W.2d at 848. Third, limiting Biese to contract remedies when Parker's services were incidental and the predominant purpose was the sale of flooring materials encourages remote commercial purchasers to allocate, insure, or assume against the risk of loss a defective product causes. *See id.* Accordingly, the trial court properly granted summary judgment dismissing Biese's negligence complaint.[11]

---

independent of its contract with Epoxy. Thus, *Colton* is also distinguishable because even without a contract, the defendant in *Colton* had a general common law duty to use reasonable care in repairing a porch. *See Landwehr*, 110 Wis. 2d at 723, 329 N.W.2d at 414.

[11] Because we conclude that the predominant purpose of these transactions was the sale of the flooring, we need not address the issue of whether the economic loss doctrine bars a tort claim strictly for negligent provision of services. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

*By the Court.*—Judgment affirmed.