DOUGLAS-HANSON COMPANY, INC., Plaintiff-Respondent,

v.

BF GOODRICH COMPANY, Defendant-Plaintiff.†

Court of Appeals

*No. 98–1737. Submitted on briefs April 26, 1999.—Decided June 29, 1999.*

(Also reported in 598 N.W.2d 262.)

†Petition to review granted.

134

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eric J. Magnuson, John B. Lunseth* and *Ernest W. Grumbles* of *Rider, Bennett, Egan & Arundel, LLP,* of *Minneapolis, Minnesota,* and

*Daniel W. Hildebrand* of *DeWitt Ross & Stevens S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott S. Payzant* and *Lisa M. Agrimonti* of *Doherty, Rumble & Butler Professional Association*, St. Paul, Minnesota.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J. BF Goodrich Company appeals a judgment awarding Douglas-Hanson Company, Inc. $1,832,134 in compensatory damages and $1,000,000 in punitive damages. Douglas-Hanson claims it is entitled to tort damages as a result of Goodrich's intentional misrepresentation that it had a commercially viable adhesive product that it was able to deliver to Douglas-Hanson for processing. Goodrich contends that the trial court erroneously denied Goodrich's motion for judgment notwithstanding the verdict (JNOV) because the economic loss doctrine precludes Douglas-Hanson's pursuit of a tort remedy. Goodrich argues that its commercial relationship was governed by a contract that did not guarantee any specific amount of product that Douglas-Hanson was to process. Goodrich also contends that the inadvertent submission of an exhibit to the jury summarizing Douglas-Hanson's expert's testimony as to damages and the court's undisclosed ex parte response to a jury request, declining to submit other experts' reports, were prejudicial errors. In addition, Goodrich maintains that the trial court erroneously instructed the jury on the elements of intentional misrepresentation.

We conclude that the economic loss doctrine does not preclude a plaintiff's claim for intentional misrepresentation when the misrepresentation fraudulently

induces a plaintiff to enter into the contract. The misrepresentation renders the contract void or voidable and accordingly contract remedies are inapplicable. We do not, however, address whether the economic loss doctrine bars an intentional misrepresentation claim if the representation does not fraudulently induce the party to enter into a contract. In addition, we conclude that the inadvertent submission of a summary of one expert witness's opinion and the court's undisclosed ex parte response to the jurors' request for additional expert summaries were not prejudicial errors. Finally, we conclude that the court properly instructed the jury on the elements of intentional misrepresentation. Accordingly, we affirm the judgment.

## BACKGROUND

Goodrich operated an adhesive systems division that was attempting to develop a specialty adhesive film to be used in the installation of carpets in automobiles. The adhesive film required "curing" by electron beam processing. Goodrich contacted Douglas-Hanson about processing the adhesive film because Douglas-Hanson had experience with electron beam processing, although it did not have the equipment to handle Goodrich's specific needs. Goodrich and Douglas-Hanson met and corresponded several times to discuss Douglas-Hanson's providing the curing service for Goodrich. At these meetings, Goodrich made representations that it had developed a satisfactory commercially viable product.

Goodrich and Douglas-Hanson entered into a "confidentiality agreement," which allowed Douglas-Hanson access to certain information about the adhesive product so that it could determine if it could cure the product. Goodrich also sent Douglas-Hanson a let-

138

ter memorializing their negotiations thus far. The letter included a forecast estimating Goodrich's anticipated sales volumes over a five-year period, a service term, a termination provision, and pricing and payment provisions. Eventually, on January 28, 1994, Goodrich prepared and signed an off-plant contract, which was delivered to Douglas-Hanson.

During this time, Douglas-Hanson and Goodrich also explored the possibility of Douglas-Hanson purchasing the equipment required to provide the type of curing required to process the adhesive. Ultimately, on January 31, Douglas-Hanson ordered an electron beam processor and arranged to have it retro-fitted to meet Goodrich's requirements. The cost of the processor, including the charges for the retro-fitting, delivery, installation and depreciation exceeded $1,000,000. Shortly thereafter, in February, Douglas-Hanson executed the off-plant service contract with Goodrich providing for the processing of the specialty adhesive. The contract did not guarantee any minimum amount of product Douglas-Hanson was to process and was to begin on June 1.

Following the execution of the contract, Goodrich continued to develop the adhesive. During early 1994, at periodic meetings between Goodrich and Douglas Hanson, Goodrich continued to discuss where the product's development stood and the logistics of handling the material and packaging.

Douglas-Hanson was unable to install its equipment until late 1994 as a result of problems with the manufacturer. Once the equipment was installed, Goodrich, in spring of 1995, sent either four or eight rolls of adhesive for curing. No additional product was submitted. Douglas-Hanson's sales manager visited Goodrich in May 1995 to discuss the project's status.

He was told Goodrich was uncertain when it was going to send additional product to Douglas-Hanson and that it had decided to conduct a market study to determine whether it had a viable product or if it had any customers for the product. Eventually, the project was discontinued, and Goodrich sold the adhesive systems division.

After demanding performance of the contract, Douglas-Hanson initiated suit alleging, among other claims, breach of contract and intentional misrepresentation. At trial, Douglas-Hanson elected to pursue the intentional misrepresentation claim. The jury returned a verdict for Douglas-Hanson on the intentional misrepresentation claim awarding $1,832,134 as compensatory damages and $1,000,000 as punitive damages. The jury concluded that Goodrich falsely informed Douglas-Hanson that the product had completed the development stage and was ready for marketing when, in truth, the specialty adhesive was still in the development stage and, despite Goodrich's efforts, was never satisfactorily developed to the point where the product could be marketed. As a result of Goodrich's representations that the product was ready for market, Douglas-Hanson acquired, at significant cost, the necessary machinery to process Goodrich's specialty adhesive.

During the trial, exhibit 46, a summary of one of plaintiff's damage experts' opinions, was inadvertently submitted to the jury to use during deliberations. The exhibit contained calculations of Douglas-Hanson's out-of-pocket and lost profit damages. This exhibit was excluded from evidence because some of the calculations contained inaccuracies. During trial, at the court's request, Douglas-Hanson submitted a revised report, exhibit 59.

During jury deliberations, the jury requested other experts' reports. The bailiff conveyed this request to the court. Without notifying the parties of the request, the court instructed the bailiff to advise the jury that no expert reports would be submitted for their use during deliberations, in accordance with the parties' prior agreement. It was only after the jury had returned a verdict that the court learned that exhibit 46 had inadvertently been submitted to the jury among the other exhibits.

Goodrich filed a post-verdict motion seeking judgment notwithstanding the verdict on the intentional misrepresentation and punitive damages claim. Goodrich also sought a new trial pursuant to § 805.15(1), STATS., based on alleged prejudicial errors at trial. The trial court denied Goodrich's motion, and this appeal ensued.

## ANALYSIS

### 1. APPLICATION OF THE ECONOMIC LOSS DOCTRINE

Before we begin our analysis, we must note a preliminary matter. At the close of trial, Douglas-Hanson elected to pursue its intentional misrepresentation claim over its breach of contract claim. It is unclear whether Douglas-Hanson's election of a tort claim for deceitful intentional misrepresentation implicates the contract. If Douglas-Hanson is asserting purely a tort claim without the contract being implicated, the economic loss doctrine has no application. The record suggests, however, that the contract is implicated. We therefore assume, for the purpose of this discussion,

that the contract is implicated in Douglas-Hanson's claim asserted against Goodrich.[1]

We now consider whether the economic loss doctrine precludes Douglas-Hanson's tort claim. "We review a trial court's denial of a motion for judgment notwithstanding the verdict (JNOV) de novo." *Logterman v. Dawson*, 190 Wis. 2d 90, 101, 526 N.W.2d 768, 771 (Ct. App. 1994). A motion for JNOV may be granted when "the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment." Section 805.14(5)(b), STATS. Goodrich contends that no liability exists as a matter of law because the economic loss doctrine bars Douglas-Hanson's tort claim. Goodrich argues that its commercial relationship with Douglas-Hanson was governed by a contract which did not guarantee any specific amount of product that Douglas-Hanson was to process.

The economic loss doctrine provides that a commercial purchaser of a product cannot recover from a manufacturer, under tort theories, damages that are solely economic losses. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842, 844–45 (1998). When contractual expectations are frustrated because of a defect in the subject matter of a contract and the only damages are economic losses, the exclusive remedy lies in contract. *Budgetel Inns, Inc. v. Micro Systems, Inc.*, 34 F. Supp.2d 720, 722 (E.D. Wis. 1999) (*Budgetel II*). The application of the economic loss doctrine to undisputed facts presents a question of law which this court determines independently of the

---

[1] The measure of damages awarded is not an issue raised on appeal and we do not address it.

trial court's determination. *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 915, 437 N.W.2d 213, 215 (1989).

We note that Douglas-Hanson asserts an intentional misrepresentation claim. We recognize that not all intentional misrepresentations fraudulently induce a party to enter into a contract. In this case, the jury found that Goodrich made an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce Douglas-Hanson to act upon it. The jury further found that Douglas-Hanson believed such representation to be true and justifiably relied on it to its pecuniary damage.

Furthermore, it is undisputed that at various meetings before the contract's execution, Goodrich represented that it had developed a satisfactory, commercially viable product; it had completed marketing work for the product; and it was committed to producing the product and needed to get it to the marketplace. It is also undisputed, however, that before January 1994, Goodrich did not have a commercially viable product. There were still unresolved problems in the development process relating to the adhesive, paper stability problems, odor problems and carpet yellowing.

Also, it is undisputed that Goodrich knew Douglas-Hanson was going to be making a substantial investment in equipment and was relying on Goodrich's statements about the product's viability in entering into the contract with Goodrich. The jury's findings and these undisputed facts establish as a matter of law that Douglas-Hanson was fraudulently induced to enter

into the off-plant service contract with Goodrich.[2] Having made this determination, we next consider whether the economic loss doctrine prohibits a plaintiff from recovering tort damages when an intentional misrepresentation fraudulently induces a plaintiff to enter a contract.

■ This case demonstrates why the economic loss doctrine should not bar an intentional misrepresentation claim when that misrepresentation fraudulently induces a party to enter into a contract. Wisconsin recognizes that parties need a background of truth and fair dealing in commercial relationships. "Subject to requirements of good faith and unconscionability, a manufacturer can negotiate with its distributors and purchasers to disclaim or limit its liability for economic losses." *Daanen & Janssen*, 216 Wis. 2d at 407, 573 N.W.2d at 848. A party to a business transaction is under a duty to disclose facts basic to the transaction if he knows the other is about to enter into it under a mistake as to them, and the other party could reasonably expect a disclosure of those facts. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 26, 288 N.W.2d 95, 105 (1980) (citing RESTATEMENT (SECOND) OF TORTS § 551 (1977)). An intentional misrepresentation that fraudulently induces a party to enter into a contract, however,

---

[2] A claim of fraudulent inducement requires a statement of fact that is untrue, the false statement must be made with the intent to defraud and for the purpose of inducing the other party to act on it, and the other party must rely on the false statement to his or her detriment. *See Merten v. Nathan*, 108 Wis. 2d 205, 209 n.2, 321 N.W.2d 173, 176 n.2 (1982). In addition, the detrimental reliance must be reasonable. *See Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 245, 170 N.W.2d 807, 810 (1969).

presents a special situation where the parties to the contract appear to negotiate freely, but, in fact, one party's ability to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent conduct. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996).

Furthermore, under Wisconsin law, a material misrepresentation of fact may render a contract void or voidable. *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 731, 456 N.W.2d 585, 588 (1990). The economic loss doctrine does not apply to fraudulently induced contracts because the person fraudulently induced to enter the contract can affirm or avoid the contract, and in so electing, has the option of selecting tort or contract damages. That option is inconsistent with the economic loss doctrine, however, which requires that the contract be affirmed.

Goodrich contends that even if its representation fraudulently induced Douglas-Hanson to enter the contract, Douglas-Hanson is confined to contract damages. We disagree because a material intentional misrepresentation, which fraudulently induces a party to enter into a contract, renders the contract void. *See id.* Because Goodrich's intentional misrepresentation fraudulently induced Douglas-Hanson to enter the contract, the contract was void and Goodrich cannot seek to limit Douglas-Hanson's damages to those flowing from a void contract.

Furthermore, public policy concerns dictate why the economic loss doctrine should not bar an intentional misrepresentation claim when that misrepresentation fraudulently induces a party to enter a contract. As evidenced by Douglas-Hanson's inability to properly or fairly assess the risks of its

145

transaction as a result of Goodrich's pre-contract misrepresentations, when a party is dishonest about the subject matter of the contract, the party best situated to assess and allocate the risk is the seller, not the purchaser. Here, the misrepresentation that the product was mature and ready for market fraudulently induced Douglas-Hanson to invest large sums in specialized equipment based on its assessment of the product's market potential. Douglas-Hanson unwittingly undertook a much different risk when it purchased the specialized equipment, however, because unbeknownst to Douglas-Hanson, Goodrich had never successfully developed the product. Therefore, Goodrich was the party best situated to assess the risk of loss under these circumstances because it possessed knowledge about the product's true viability that it did not disclose. While Douglas-Hanson could assess the market demand for the adhesive, it could not evaluate the product's viability because that determination required knowledge which was either trade secret information or knowledge of the product's actual state of maturity, which Goodrich did not disclose. Douglas-Hanson had no specialized knowledge of the product and was required to rely on Goodrich's representations about the product's development.

Although Goodrich may argue that Douglas-Hanson assumed the risk that no product would be submitted for processing because the contract guaranteed no minimum amount of work, that argument ignores the difference between the type of risk assessment Douglas-Hanson can do when considering Goodrich's representation about the product's commercial success and the type of risk assessment Douglas-Hanson can do when evaluating the likelihood of the

146

product's successful development. Goodrich's false representation that the product was ready for market eliminated Douglas-Hanson's ability to fairly evaluate the likelihood of the product's successful development and the consequent risk involved in investing in the specialized equipment necessary to process the product still in development. Therefore, Goodrich bears tort responsibility for misrepresenting the information necessary to appropriately assess the risks of the commercial transaction. We believe this conclusion supports the policy concern of encouraging the party best situated to assess the risk of economic loss to assume and insure against that risk. *See Daanen & Janssen*, 216 Wis. 2d at 403, 573 N.W.2d at 846.

Finally, Wisconsin courts have not directly addressed whether the economic loss doctrine applies when a plaintiff seeks economic damages under an intentional misrepresentation theory when the intentional misrepresentation fraudulently induces the party to enter a contract. The Seventh Circuit and Wisconsin District Courts have expressed different opinions predicting how Wisconsin courts would decide the question. We agree with the Wisconsin Eastern District and conclude its reasoning is persuasive.

In *Cooper Power Systems, Inc. v. Union Carbide Chems. & Plastics Co.*, 123 F.3d 675, 682 (7th Cir. 1997), the Seventh Circuit concluded that there was no basis for treating intentional misrepresentation claims differently than other misrepresentation claims applying the economic loss doctrine. Wisconsin Eastern District decisions, however, have recognized an exception to the economic loss doctrine for fraudulent inducement claims, but only when the claim does not touch upon the quality or character of or is not "interwoven" with the subject matter of the contract. *See*

*Raytheon Co. v. Mcgraw-Edison Co.*, 979 F. Supp. 858, 870 (E.D. Wis. 1997); *see also Ice Bowl L.L.C. v. Weigel Broadcasting Co.*, 14 F. Supp.2d 1080, 1083 (E.D. Wis. 1998). Most recently, the Eastern District of Wisconsin has concluded that claims of fraud in the inducement of a contract are not barred by the economic loss doctrine. *See Budgetel Inns, Inc. v. Micros Systems Inc.*, 8 F. Supp.2d 1137, 1149 (E.D. Wis. 1998) (*Budgetel I*); *see also on reconsideration Budgetel II*, 34 F. Supp.2d at 724.

We recognize that Wisconsin courts are not bound by federal district courts' opinions on Wisconsin law. *Professional Office Bldgs. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580–81, 427 N.W.2d 427, 429–30 (Ct. App. 1988). Nevertheless, this court has adopted federal court decisions considered to be persuasive on a particular question. *Streff v. Town of Delafield*, 190 Wis. 2d 348, 356–57, 526 N.W.2d 822, 825 (Ct. App. 1994). We agree with the rationale of the *Budgetel* decisions.

In concluding that the economic loss doctrine does not apply when there are claims of fraud in the inducement of a contract, the *Budgetel II* court reasoned that although contract law rests on obligations imposed by bargain:

> [T]he duty of honesty when negotiating a contract is not an obligation imposed by the contract, which does not yet exist, but instead by the common law. An intentional misrepresentation that induces one party to enter into an agreement draws into question the validity of the agreement itself; no party, commercial or individual, should be limited solely to remedies under a contract that perhaps should be rescinded altogether. . . . [T]he culpable mental state for fraudulent inducement occurs before the

148

contract even exists. That provides the independence and extraneousness from the contract required under Wisconsin law.

*Budgetel II*, 34 F. Supp.2d at 724.

In considering the public policy foundations underlying the economic loss doctrine, the *Budgetel II* court addressed, in particular, the need to encourage the purchaser, as the party best suited to assess the risk of economic loss, to assume, allocate, or insure against that risk.[3] In that regard, the court reasoned that any amount of due diligence cannot protect against deliberate dishonesty:

> When a seller is lying about the subject matter of a contract, the party best suited to assess the risk of economic loss switches from being the purchaser, who cannot possibly know which of several statements may be a lie, to the seller, who clearly knows.

*Id.* at 725.

We agree that under such circumstances, the better public policy is not to allow the economic loss doctrine to apply when there is an intentional misrepresentation fraudulently inducing a party to enter into a contract. We adopt this rationale and conclude that the economic loss doctrine does not bar claims for

---

[3] Application of the economic loss doctrine to tort actions between commercial parties is generally based on three policies: (1) to maintain the fundamental distinction between tort law and contract law; (2) to protect commercial parties' freedom to allocate economic risk by contract and (3) to encourage the party best situated to assess the economic loss, the commercial purchaser, to assume, allocate, or insure against that risk. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403, 573 N.W.2d 842, 846 (1998).

intentional misrepresentation when the misrepresentation fraudulently induces a party to enter into a contract. We do not, however, address whether the economic loss doctrine bars an intentional misrepresentation claim if the representation does not fraudulently induce the party to enter into a contract. Because the economic loss doctrine does not preclude Douglas-Hanson's tort claim, we affirm the trial court's order denying Goodrich's JNOV motion.

## 2. WHETHER GOODRICH IS ENTITLED TO A NEW TRIAL

Goodrich contends that the trial court erred when it denied his post-verdict motion seeking a new trial pursuant to § 805.15(1), STATS.[4] Goodrich asserts that three prejudicial procedural errors at trial warrant a new trial: (1) the jury was exposed to extraneous prejudicial information; (2) the court improperly conducted an ex parte communication with the jury; and (3) the court erroneously instructed the jury on the law of intentional misrepresentation.

The decision whether to grant a new trial is within the trial court's discretion and will not be disturbed absent an erroneous exercise of discretion. *Dostal v. Millers Nat'l Inc. Co.*, 137 Wis. 2d 242, 253, 404 N.W.2d 90, 94 (Ct. App. 1987). When procedural errors are alleged, we affirm the trial court's ruling unless the alleged errors have affected the substantial rights of

---

[4] Section 805.15(1), STATS., provides in relevant part:

(1) MOTION. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice.

the party seeking to reverse or set aside the judgment, or to secure a new trial. Section 805.18(2), STATS.[5]

We first consider whether the inadvertent delivery of an exhibit to the jury warrants a new trial. Whether extraneous information is so prejudicial as to require a verdict's reversal is a question of law we decide independently. *Castaneda by Correll v. Pederson*, 185 Wis. 2d 199, 211–12, 518 N.W.2d 246, 251 (1994). When a jury has been improperly exposed to or has considered extraneous prejudicial information and there is a reasonable probability that the error would have a prejudicial effect on a hypothetical jury, a verdict should generally be set aside. *Id.* If the information is not prejudicial, however, the error is harmless, and no new trial is required. *State v. Eison*, 194 Wis. 2d 160, 179, 533 N.W.2d 738, 745 (1995). In determining the probable effect on an average jury, we consider such factors as the nature of the extraneous information, the circumstances under which it was brought to the jury's attention, the nature of the plaintiff's case and the defense, and the connection between the extraneous information and a material issue in the case. *Castaneda*, 185 Wis. 2d at 213, 518 N.W.2d at 251.

Exhibit 46 was introduced at trial by Douglas-Hanson's damages expert. It set forth the expert's cal-

---

[5] Section 805.18(2), STATS., states:

No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

culations of Douglas-Hanson's out-of-pocket and lost profit damages. The exhibit was not admitted into evidence because it contained inaccuracies in the warehousing and forklift cost calculations. At the court's request, the expert submitted a revised report, exhibit 59. Exhibit 46 was erroneously submitted to the jury for their consideration during deliberations after the court ruled and the parties agreed on the record that expert reports would not go back to the jury. Apparently, the court's submission to the jury was not reviewed by either the court or the parties, and as a result, the jury inadvertently received a summary of one expert witness's testimony. The question before us is whether the exhibit is extraneous prejudicial information and whether there is a reasonable probability that the error affected the trial's results. *See* § 805.18(2), STATS.

Even assuming the exhibit is extraneous information, we conclude that its inclusion for the jury's consideration during deliberations is not prejudicial error. *See Castaneda,* 185 Wis. 2d at 211–12, 518 N.W.2d at 251. We first note that some of the financial information contained in the report was admitted into evidence by other exhibits. For instance, out-of-pocket expenses were admitted as exhibits 31–39. Furthermore, to the extent that the warehousing and forklift costs were not admitted into evidence, defense counsel was able to cross-examine the expert on those costs, and the jury was present when the court disallowed them in the damages calculations. The jury also heard testimony from Goodrich's expert, disputing Douglas-Hanson's damages evidence and could properly assess the information contained on the erroneously submitted exhibit. Finally, the judge instructed the jury about

what trial evidence it could consider and what evidence must be disregarded both at the time the damages evidence was disallowed and at the trial's close. Considering the totality of the factors identified in *Castanada*, we conclude there was no reasonable probability that the error would have had a prejudicial effect on a hypothetical average jury. *Id.* at 212–13, 518 N.W.2d at 251.

Next, we consider whether an ex parte communication between the judge and jury warranted a new trial. In this instance, the jury orally requested expert reports during their deliberations. They communicated their request to the bailiff, who in turn, communicated the request to the court. The court told the bailiff to tell the jury that no expert reports were going to the jury and further reminded the jurors, through the bailiff, that all questions were to be submitted in writing. Generally, "[a]fter the trial jury is sworn, all statements or comments by the judge to the jury or in their presence relating to the case shall be on the record." Section 805.13(1), STATS. "Communications between the jury and the bailiff under circumstances such as this are not grounds for a new trial unless there is a showing that prejudice resulted." *Pollack v. Olson*, 20 Wis. 2d 394, 401, 122 N.W.2d 426, 430 (1963).

We conclude that the court's receipt of the jury's request for additional exhibits should have been conveyed to the parties and counsel. Nonetheless, we conclude that the court's error in failing to do so was not prejudicial. The decision whether to submit various exhibits to the jury is subject to the court's exercise of discretion. *State v. Jensen*, 147 Wis. 2d 240, 259, 432 N.W.2d 913, 921 (1988). Although the court was una-

ware that a single report had been inadvertently submitted, the court could reasonably conclude that the exhibits the jury requested were simply repetitions of oral testimony received in court. It is not an erroneous exercise of discretion for the court to exclude summaries of specific witnesses' testimonies based upon the conclusion that the exhibit only reflects testimony already presented for the jury's consideration. The failure to submit a summary of all other experts' reports is not error but represents the court's proper exercise of discretion in determining which exhibits the jury should consider during its deliberations. Accordingly, the court's failure to advise the parties and counsel of the jury's request and the court's decision in regard to that request did not prejudice the parties' rights.

Finally, we address Goodrich's contention that the trial court erroneously instructed the jury on the law of misrepresentation by failing to instruct the jury that Douglas-Hanson's reliance on the alleged misrepresentation had to be reasonable and failed to instruct and require the jury to find causation. Trial courts have wide discretion in deciding what instructions will be given, as long as they fully and fairly inform the jury of the principles of law applicable to the particular case. *D.L. v. Huebner*, 110 Wis. 2d 581, 624, 329 N.W.2d 890, 909 (1983). We will not reverse if the instruction as a whole correctly states the law. *White v. Leeder*, 149 Wis. 2d 948, 954–55, 440 N.W.2d 557, 559–60 (1989). We test the prejudicial effect of an erroneous instruction by determining whether the jury was probably misled. *D.L.*, 110 Wis. 2d at 628, 329 N.W.2d at 911.

We are satisfied that the court properly instructed the jury on the law of intentional misrepresentation. The trial court followed WIS J I—CIVIL 2401, which sets forth the elements of deceitful intentional misrepresentation. The jury was not only instructed that Douglas-Hanson had to justifiably rely on the misrepresentation, it was also told Douglas-Hanson could not rely on a representation it knew to be untrue or which it should have recognized as preposterous or which it could easily recognize as untrue. This discussion in essence, encompasses the concept of a "reasonable" or "unreasonable" reliance. Furthermore, the jury was instructed that it must find whether Douglas-Hanson relied on the misrepresentation to its pecuniary damage. This instruction supplies the necessary causation element. Accordingly, because the trial court properly instructed the jury on the law of intentional misrepresentation, we conclude the trial court did not erroneously exercise its discretion by denying Goodrich's motion for a new trial on this claim of error.

*By the Court.*—Judgment affirmed.