SHANDWICK HOLDINGS, LTD., Plaintiff,

v.

CARVER BOAT CORPORATION, Genmar Holdings, Inc., Defendants and Third–Party Plaintiffs,

v.

Cummins Marine and Raytheon Marine Company, Third–Party Defendants.

No. 99–C–285.

United States District Court, E.D. Wisconsin.

May 2, 2000.

Kathy L. Nusslock, William L. Shenkenberg, Davis & Kuelthau, Milwaukee, WI, for Plaintiff.

Ross A. Anderson, James W. Greer, Steven W. Keane, Whyte Hirschboeck Dudek S.C., Milwaukee, Defendant.

Steven J. Berryman, Quarles & Brady, Milwaukee, WI, Ronald R. Ragatz, DeWitt Ross & Stevens, Madison, WI, for Third–Party Defendants.

**DECISION· AND ORDER**

CURRAN, District Judge.

Shandwick Holdings, Ltd. is suing the Carver Boat Corporation and its parent company, Genmar Holdings, Inc. for damages stemming from the defects in a yacht Shandwick purchased from Carver, which designed and manufactured the craft. In its Second Amended Complaint Shandwick

seeks $821,000.00 in compensatory damages, additional damages for maintenance and repair, and punitive damages, or, in the alternative, Shandwick wants recission of the contract and restitution or revocation of acceptance and damages. The Plaintiff claims this relief for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, negligence, intentional misrepresentation, and breach of the duty of good faith and fair dealing.[1]

The Plaintiff is a Bahamian corporation[2] with its principal place of business on the Isle of Man, United Kingdom. Carver is a Delaware Corporation with its principal place of business in Pulaski, Wisconsin, and Genmar is a Delaware Corporation with its principal place of business in Minneapolis, Minnesota. Because the Plaintiff is an alien and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, this court has diversity jurisdiction over the subject matter of this action. See 28 U.S.C. § 1332(a)(2).[3]

The Defendants have answered and denied liability. They have also brought a third-party action against Cummins Marine and Raytheon Marine Company. Cummins manufactured the inboard engines on the Carver yacht and Raytheon manufactured the navigation components.

After the deadline for the completion of discovery expired, the Plaintiff and the Defendants each moved for partial summary judgments. See Federal Rule of Civil Procedure 56. These motions are now fully briefed.

## I. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The movant must point to the portions of these papers demonstrating the lack of any genuine issue of material fact, and if the movant succeeds, the non-movant must go beyond the pleadings and find parts of affidavits, depositions, answers to interrogatories, or admissions on file demonstrating that a genuine issue does in fact remain for trial. See Celotex Corporation v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether the movant has met its burden, the court "must be guided by the substantive evidentiary standards that apply to the case."[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either side. See Anderson, 477 U.S. at 250, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S.Ct. 2505.

1. The parties have proposed no reasons why the claims in this diversity case should not be governed by the law of the forum. Therefore, this court will apply the substantive law of Wisconsin. See generally Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. The Plaintiff has alleged that Shandwick Holdings, Ltd. is not a limited liability company which would require that the citizenships of the shareholders be determinative of diver-

sity jurisdiction. See Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir.1998).

3. The Second Amended Complaint cites 28 U.S.C. § 1332(3) as the basis for jurisdiction. There is no such subsection of section 1332.

4. The parties have not identified which evidentiary standards apply to each of the Plaintiff's various claims.

A summary judgment procedure is not meant to be a trial on affidavits. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ...." *Id.* at 255, 106 S.Ct. 2505. Even cases such as Shandwick that hinge largely on contract interpretation may not be decided on summary judgment if the court is presented with disputed, material facts. *See Parrillo v. Commercial Union Insurance Company*, 85 F.3d 1245, 1248 (7th Cir.1996).

## II. *DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

The undisputed facts show that in August of 1997, representatives of Shandwick traveled to Carver's plant in Pulaski, Wisconsin to negotiate the purchase of a 1998 Carver 530 Voyager yacht. At the meeting, a contract for the sale of the yacht was signed. After the yacht was delivered, Shandwick complained of numerous problems with the yacht. It eventually filed this lawsuit to recover its damages for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, negligence, intentional misrepresentation, and breach of the duty of good faith and fair dealing.

Defendants Carver Boat and Genmar Holdings ask this court to grant them partial summary judgment on the Plaintiff's claims for negligence, intentional misrepresentation and punitive damages. They argue that Wisconsin's "economic loss doctrine" precludes the purchaser of a product from recovering solely economic losses from the manufacturer under negligence or strict liability theories. *See Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*, 148 Wis.2d 910, 919–20, 437 N.W.2d 213, 217 (1989).

### A. NEGLIGENCE

■ Shandwick claims that Carver and its agents were negligent in failing to discover and correct various defects in the yacht before and after it was delivered. The Plaintiff explains that: "The negligence relates not to the sale of the vessel, but rather the negligent provision of services, including the failure to correct faults and defects during the pre-delivery preparation and testing, as well as failing to properly perform repair work on the vessel after the discovery of faults and defects." Shandwick Holdings, Ltd.'s Brief in Opposition to Carver and Genmar's Motion for Partial Summary Judgment at 10. Shandwick reasons that:

After Shandwick notified Carver of the serious problems with the vessel experienced during its initial voyage, Carver and Shandwick reached an agreement whereby Carver was to be responsible for making all repairs to the vessel, that the yacht would indeed be the vessel Shandwick ordered, and that the repairs would be completed by June 1, 1998. The defects and faults were serious enough to justify recission or revocation. Thus, the agreement constituted a separate contract for services, with new consideration consisting of Shandwick's forbearance from taking actions at that time to which it would be entitled. This agreement is separate and distinct from the purchase agreement for the vessel.

*Id.* at 11 (citations omitted).

In moving for summary judgment, the Defendants maintain that, under Wisconsin law, the economic loss doctrine applies to bar tort claims related to performance of services incidental to a contract. *See Biese v. Parker Coatings, Inc.*, 223 Wis.2d 18, 28–29, 588 N.W.2d 312, 317 (Ct.App. 1998). They point out that the Plaintiff has not produced a scintilla of evidence that the parties entered into a separate contract for repair services or that the Plaintiff rescinded or revoked the sales contract. Even if there was a second contract, the Defendants urge the court to follow the Western District of Wisconsin

which has predicted that Wisconsin courts would apply the economic loss doctrine to bar negligence claims related to contracts for services only. *See Stoughton Trailers, Inc. v. Henkel Corporation,* 965 F.Supp. 1227, 1233 (W.D.Wis.1997).

The court agrees with the Defendants. The record shows that any repair services performed by the Defendants were incidental to the initial sales contract and that there is no evidence to establish that the parties entered into a second, separate contract. Therefore, the court concludes that the economic loss doctrine bars Shandwick's negligence claim and will grant Carver and Genmar partial summary judgment on this theory of liability.

## B. INTENTIONAL MISREPRESENTATION

■ Next, Carver and Genmar want the court to grant judgment in their favor on Shandwick's claim of intentional misrepresentation. They argue that intentional misrepresentation is a tort claim which is barred by Wisconsin's economic loss doctrine.

Shandwick alleges that on· August 8, 1997, its three shareholders—Artsi Wine, Mordechai Strokovsky, and Ezra Harel—toured the Carver facility and told Carver representatives that they were interested in purchasing a yacht which would be suitable for use on the Mediterranean Sea. According to Shandwick, the Carver representatives stated that their model 530 Voyager was suitable for use on the Mediterranean. This statement allegedly induced Shandwick to enter into a contract for the construction and purchase of a 530 Voyager.[5] After the yacht was delivered, Shandwick claims to have discovered that these representations were untrue. The yacht was not fit for use on the Mediterranean, so the Defendants filed their claim for intentional misrepresentation.

**5.** The Defendants deny that they represented that the 530 Voyager was fit for use on the

■ The Wisconsin Supreme Court has not issued an opinion resolving the issue of whether the economic loss doctrine bars claims for intentional misrepresentation or fraudulent inducement when the claim is related to a contractual sale. When a state's highest court has not ruled on an issue, a federal court sitting in diversity must attempt to predict what ruling the state court would make. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The Defendants point out that the Seventh Circuit has predicted that the Wisconsin Supreme Court would rule that the economic loss doctrine bars an intentional misrepresentation claim when the alleged misrepresentation is related to the quality of the product. *See Cooper Power Systems, Inc. v. Union Carbide Chemicals & Plastics Company,* 123 F.3d 675, 682 (7th Cir.1997). Lower federal courts in Wisconsin have relied on a case from the Michigan Court of Appeals in ruling that a claim for intentional misrepresentation or fraudulent inducement is barred unless it is extrinsic to the contract. *See, e.g., Raytheon Company v. McGraw–Edison Company, Inc.,* 979 F.Supp. 858 (E.D.Wis.1997), *citing Huron Tool & Engineering Company v. Precision Consulting Services, Inc.,* 209 Mich.App. 365, 532 N.W.2d 541 (1995).

The Plaintiff, in turn, cites decisions of the Wisconsin Court of Appeals and federal district courts espousing its position that the economic loss doctrine does not bar its intentional misrepresentation claim. *See, e.g., Douglas–Hanson Company, Inc. v. BF Goodrich Company,* 229 Wis.2d 132, 598 N.W.2d 262 (Ct.App.1999), *aff'd by an equally divided court,* 2000 WI. 22, 233 Wis.2d 276, 607 N.W.2d 621, (2000); *Budgetel Inns, Inc. v. Micros Systems, Inc.,* 8 F.Supp.2d 1137, 1149 (E.D.Wis.1998),*reconsideration denied,* 34 F.Supp.2d 720 (E.D.Wis.1999).

Mediterranean Sea.

In *Douglas–Hanson Company, Inc. v. BF Goodrich Company,* 229 Wis.2d 132, 598 N.W.2d 262 (Ct.App.1999), the Wisconsin Court of Appeals ruled that the economic loss doctrine did not bar a claim for fraudulent inducement. The parties had entered into a contract whereby Douglas–Hanson agreed to process adhesive film for BF Goodrich. After Douglas–Hanson invested in equipment for the processing, BF Goodrich sent it only a few rolls of adhesive for processing and eventually discontinued the project.

At the close of trial, Douglas–Hanson elected to pursue its intentional misrepresentation claim over its breach of contract claim. Douglas–Hanson prevailed on its claim that BF Goodrich had fraudulently induced it to enter into the contract by representing that the adhesive had completed the development stage and was ready for marketing. Although the parties' contract did not guarantee any specific amount of product that Douglas–Hanson was to process, the Wisconsin Court of Appeals concluded that the contract was "implicated." *Id.* at ——, 598 N.W.2d at 267. The court reasoned that: "Because Goodrich's intentional misrepresentation fraudulently induced Douglas–Hanson to enter the contract, the contract was void and Goodrich cannot seek to limit Douglas–Hanson's damages to those flowing from a void contract." *Id.* at ——, 598 N.W.2d at 269. The court of appeals then held that a claim for fraudulent inducement can be maintained whether or not the claim is extrinsic to the contract. *See Id.* at ——, 598 N.W.2d at 270.

■ BF Goodrich appealed to the Wisconsin Supreme Court. The court was equally divided, so the decision of the court of appeals was summarily affirmed. *See Douglas–Hanson Company, Inc. v. BF Goodrich Company,* 2000 WI 22, 607 N.W.2d 621 (2000). However, an affirmance by an equally divided court is without precedential effect. *See Neil v. Biggers,* 409 U.S. 188, 192, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Under these circumstances, this court must follow the prediction of the Seventh Circuit Court of Appeals, unless the parties have suggested reasons why intervening events would persuade the Seventh Circuit to overrule its earlier pronouncement. *See Hultz v. Federated Mutual Insurance Company,* 817 F.Supp. 59, 62 (C.D.Ill.1993); *Scadron v. City of Des Plaines,* 734 F.Supp. 1437, 1452 (N.D.Ill.1990), (*citing Owens–Illinois, Inc. v. Aetna Casualty and Surety Company,* 597 F.Supp. 1515, 1520 (D.D.C.1984), *citing Newell v. Harold Shaffer Leasing Company,* 489 F.2d 103, 107 (5th Cir.1974), and *Sprinkle v. Farm Bureau Insurance Companies,* 492 F.2d 469, 471–72 (5th Cir. 1974)), *aff'd,* 989 F.2d 502 (1993). Neither the Plaintiff nor the Defendants in this case have offered any reason why the Seventh Circuit would change the prediction it made in *Cooper Power Systems, Incorporated v. Union Carbide Chemicals & Plastics Company, Incorporated,* 123 F.3d 675, 682 (7th Cir.1997), in which the court wrote:

Cooper's final argument to escape the confines of commercial law is to assert that its misrepresentation claims, although arising in tort, are an exception to the economic loss doctrine. This court, however, has already predicted that Wisconsin would not allow a negligence or strict liability misrepresentation claim seeking to recover economic damages. *See Badger Pharmacal, Inc. v. Colgate–Palmolive Company,* 1 F.3d 621, 628 (7th Cir.1993). We perceive no basis for treating Cooper's intentional misrepresentation claim any differently. Cooper's misrepresentation claims assert that Carbide misrepresented the properties (or failed to speak when it had a duty to do so) of VYES to PFI, which in turn was unable to keep Cooper abreast of potential problems with Weathercote–T. Misrepresentations such as these, that ultimately concern the quality of the product sold, are properly remedied through claims for breach of warranty.

*Cooper Power Systems, Inc.,* 123 F.3d at 682.

Shandwick protests that *Cooper* does not discuss an exception for fraudulent inducement claims. This court agrees that *Cooper* made no exception for fraudulent inducement and, being bound by that decision, must grant partial summary judgment in favor of the Defendants on Shandwick's intentional misrepresentation claim which ultimately concerns the quality of the yacht sold.

## C. PUNITIVE DAMAGES

Because the court is granting judgment and dismissing Shandwick's claims for negligence and intentional misrepresentation, it must also dismiss Shandwick's request for punitive damages. In the absence of these tort claims, punitive damages are not available.

## III. *SHANDWICK'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Shandwick asks this court for a judgment declaring that the limited warranty propounded by Carver Boat and Genmar Holdings is invalid. However, the court finds that the record is insufficient to support a ruling on this issue. The Plaintiff's three shareholders are material witnesses to the events forming the basis for this claim. However, the three shareholders did not appear for their scheduled depositions during the discovery period, so the Defendants have not had an opportunity to question them concerning the veracity of the statements made in the affidavits they have appended to the partial summary judgment motion. Because of the shareholders' failure to allow the discovery process to be completed, the issue concerning the limited warranty will have to be decided at trial. *See* Federal Rule of Civil Procedure 56(f).

## *ORDER*

For these reasons, the court ORDERS that "Carver Boat Corporation and Genmar Holdings, Inc. Motion for Partial Summary Judgment" (filed February 25, 2000) IS GRANTED. Partial summary judgment is granted in favor of Defendants Carver Boat Corporation and Genmar Holdings, Inc. on Plaintiff Shandwick Holdings, Ltd.'s claims of negligence and intentional misrepresentation and on its request for punitive damages.

IT IS FURTHER ORDERED that Shandwick Holdings, Ltd.'s "Motion for Partial Summary Judgment" (filed March 1, 2000) IS DENIED without prejudice.