James B. LINDEN and Dianne C. Linden,
Plaintiffs-Appellants,†

v.

CASCADE STONE COMPANY, INC., West Bend Mutual
Insurance Company and Rich Fern d/b/a Allied
Construction, Defendants-Respondents,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Intervening Defendant-Respondent.

Court of Appeals

*No. 04–0004. Submitted on briefs June 28, 2004.—Decided
August 17, 2004.*

2004 WI App 184

(Also reported in 687 N.W.2d 823.)

---

† Petition to review granted 12-15-2004.

---

270

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark A. Seidl* of *Seidl & Stingl, S.C.*, Wausau.

On behalf of the defendant-respondent, West Bend Mutual Insurance Company, the cause was submitted on the brief of *R. Michael Waterman* of *Mudge Porter Lundeen & Seguin, S.C.*, Hudson.

On behalf of the defendant-respondent, Rich Fern d/b/a Allied Construction, the cause was submitted on the brief of *Mark S. Henkel* of *First Law Group, SC*, Stevens Point.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Paul E. David* of *Wendorff, Ellison & David, LLP*, Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. James and Dianne Linden appeal a summary judgment dismissing their negligence and contract claims against Cascade Stone Company, Inc., Rich Fern d/b/a Allied Construction, and their insurers for alleged faulty workmanship in the construction of the Lindens' home. The Lindens contend that: (1) the economic loss doctrine does not bar their negligence claims; (2) the trial court erred in dismissing Cascade's insurer, West Bend Mutual Insurance Company, since its policy covers their contract claim against Cascade; and (3) the trial court erred in denying leave to amend their complaint against Fern. Because we determine the predominant purpose of the underlying transaction was for a product, we conclude that the economic loss doctrine bars the Lindens' tort claims. We decline to review the trial court's ruling dismissing West Bend since any error was invited. Finally, we conclude that the trial court properly exercised its discretion in refusing to allow the Lindens to amend their complaint to add a contract claim against Fern.

## BACKGROUND

¶ 2. In March 1999, James and Dianne Linden contracted with Groveland Craftsman, Inc., a general contractor, to construct a new home in Houlton. Groveland retained a number of subcontractors to complete the construction of the Linden home. The subcontractor Cascade Stone Company, Inc., was retained to install the exterior stucco siding. Richard Fern, d/b/a Allied Construction, was retained to install the roof.

¶ 3. The Lindens took occupancy of the home in November 1999. They experienced a variety of moisture intrusion problems by way of the windows, roof and exterior walls, resulting in deterioration and mold.

¶ 4. In June 2000, the Lindens commenced this action.[1] The Lindens asserted contract and tort claims against the stucco subcontractor, Cascade, and coverage of those claims by Cascade's insurer, West Bend Mutual Insurance Company.[2] They also claimed negligence by Fern, the roofing subcontractor, and liability for Fern's negligence by Fern's insurer, American Family Mutual Insurance Company.

¶ 5. On October 1, 2003, the trial court granted summary judgment in favor of the defendants. The court found that the economic loss doctrine barred the Lindens' tort claims against all parties. The court also held that there was no coverage under the West Bend policy for the contract claim against Cascade and dismissed that claim. Finally, the court denied the Lindens' motion to amend the complaint to add a contract claim against Fern.

## DISCUSSION

¶ 6. When reviewing a summary judgment, we perform the same function as the trial court and our review is independent of the trial court's decision. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). On summary judgment, a court must view the facts in the light most favorable to the

---

[1] Groveland (the general contractor) and Vetter Windows (the window manufacturer) were also defendants in this action. The claims against them were subsequently settled. The complaint was amended three times and additional parties joined. We only address the claims of the remaining parties.

[2] Western National Mutual Insurance Company also insured Cascade. The Lindens' claims against Western were dismissed and Western is not a party to this appeal.

non-moving party. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (Ct. App. 1986). We will reverse a summary judgment if the trial court incorrectly decided a legal issue or if material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

## I. ECONOMIC LOSS DOCTRINE

¶ 7. "The economic loss doctrine is a judicially created doctrine under which a purchaser of a product cannot recover from a manufacturer on a tort theory for damages that are solely economic." *Bay Breeze Condo. Ass'n v. Norco Windows, Inc.*, 2002 WI App 205, ¶ 9, 257 Wis. 2d 511, 651 N.W.2d 738. Economic damages are those arising because the product does not perform as expected, including damage to the product itself or monetary losses caused by the product. *Biese v. Parker Coatings, Inc.*, 223 Wis. 2d 18, 23, 588 N.W.2d 312 (Ct. App. 1998). Economic damages do not include losses due to personal injury or damage to other property. *Id.*

¶ 8. The economic loss doctrine preserves the distinction between contract and tort law. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403–04, 573 N.W.2d 842 (1998); *see also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986) (economic loss doctrine seeks to avoid drowning contract law in "a sea of tort"). The premise of the economic loss doctrine is that contract law, and particularly the law of warranty, is better suited than tort law for dealing with purely economic loss. *Daanen*, 216 Wis. 2d at 403–04. Allowing buyers and sellers to allocate the risk of economic losses by contract promotes an effi-

cient, predictable marketplace. *Id.* at 410–12. On the other hand, claims concerning personal injury or damage to property other than the product itself are best governed by tort law, an area of law intended to protect people from misfortunes that are unexpected and overwhelming. *Id.* at 405; *see also Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 248, 593 N.W.2d 445 (1999). In operation, "the economic loss doctrine requires transacting parties in Wisconsin to pursue only their contractual remedies when asserting an economic loss claim . . . ." *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 34, 262 Wis. 2d 32, 662 N.W.2d 652.

¶ 9. When a contract involves both products and services, i.e., a "mixed contract," this court looks to the predominant purpose test to determine whether the economic loss doctrine applies. *Biese*, 223 Wis. 2d at 24–25. The predominant purpose test for mixed contracts is "whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of a service, with goods incidentally involved (*e.g.*, contract with an artist for a painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom)." *Id.* at 25 (citations omitted). If the predominant purpose of the contract is for a product, the economic loss doctrine applies.[3]

---

[3] The Wisconsin Supreme Court is reviewing the issue of whether the economic loss doctrine applies to a service contract. *See Insurance Co. of N.A. v. Cease Elec. Inc.*, 2004 WI App 15, 269 Wis. 2d 286, 674 N.W.2d 886, *cert. granted*, 2004 WI 20 (Feb. 24, 2004) (No. 03–0689). In that case, we held that the doctrine does not apply to services. *Id.* at ¶ 23. Since we conclude that

¶ 10. Before we can determine the predominant purpose of the transaction, however, we must determine the relevant transaction to be examined. The subcontractors and their insurers argue that the underlying transaction here is the general contract and its predominant purpose is for the sale of a product—a house. The Lindens, relying on *Biese*, contend we must look to the subcontracts of Fern and Cascade, which they claim are predominately for services.

¶ 11. In *Biese*, the plaintiff contracted with A to Z Epoxy Coatings to install an epoxy floor. *Biese*, 223 Wis. 2d at 20. Parker provided the flooring materials and Epoxy installed the floor. *Id.* Biese sued Parker in tort for negligent provision of defective flooring materials "and/or" faulty installation instructions. *Id.* at 21. We applied the predominant purpose test and held that the transaction was for a product, with any service being incidental. *Id.* at 20. Since the predominant purpose was for a product, the economic loss doctrine applied and barred the tort-based claims against Parker. *Id.* Although our analysis focused on what Parker, a subcontractor, contributed to the transaction, we were ultimately concerned with the predominant purpose of "the entire underlying transaction." *Id.* at 26. Since Parker provided primarily flooring materials, the transaction was predominately for a product and the economic loss doctrine applied. *Id.* at 28–29.

¶ 12. The Lindens contend *Biese* holds that we should look to the subcontract in applying the predominant purpose test. *Biese* should not be read so broadly. The relevant transaction was never disputed by the parties in *Biese*. Indeed, whether we analyzed the

the contract here is for a product, we need not address the application of the doctrine to services.

278

general contract (purchase of a floor) or the subcontract (purchase of flooring materials), our holding would have been the same: the transaction was for the sale of a product and the economic loss doctrine barred the negligence claims.

¶ 13. Like the Lindens, the plaintiff in *Biese* attempted to avoid application of the economic loss doctrine by pointing to a specific aspect of the transaction and claiming it was a service. Biese argued that Parker's obligation to reinstall the floor was not incidental to the contract. *Id.* at 28, n.8. We looked at the *entire transaction,* however, and concluded that the services were incidental. *Id.*

■

¶ 14. Additionally, looking at the general contract supports the three policies underlying the economic loss doctrine: (1) preserving separation between tort and contract; (2) protecting freedom to contract; and (3) encouraging purchasers to assume, allocate or insure against risk of economic loss. *Wausau Tile,* 226 Wis. 2d at 247. First, looking at the entire underlying transaction maintains the fundamental distinction between tort and contract law. At its core, the Lindens' complaint is that the house they received is not the house for which they contracted. Groveland's decision to subcontract portions of the house construction to subcontractors should not permit the Lindens to make an "end around" their contract and the economic loss doctrine. *See Biese,* 223 Wis. 2d at 30. Allowing the Lindens to circumvent their contract by pursuing claims against the subcontractors blurs the line between contract and tort, a result the economic loss doctrine seeks to avoid.

¶ 15. Second, examining the general contract here protects the parties' freedom of contract. The Lindens and Groveland negotiated a contract for a

279

house. That contract included warranties and provided remedies in the event of warranty breach. Groveland then negotiated contracts with the subcontractors to complete portions of the house. Allowing the Lindens to recover their economic losses from the subcontractors in tort frustrates the freedom to contract of all the parties. A tort recovery by the Lindens essentially rewrites their contract to include a more expansive warranty than they negotiated and paid for. *See Wausau Tile*, 226 Wis. 2d at 258.

¶ 16. Third, using the general contract and applying the economic loss doctrine encourages the home buyer to assume, allocate or insure against the risk of loss caused by a defective house. Barring the negligence claims neither leaves the Lindens without a remedy nor leaves subcontractors free to perform shoddy work. All of these concerns are adequately addressed by contract law.

¶ 17. Since the relevant underlying transaction is the general contract for the construction of a home, we conclude that the predominant purpose was to provide a product. The Lindens negotiated with Groveland for the construction of a house on their property. That contract provided for various remedies if the Lindens experienced problems with the house. Although the Lindens' complaint is framed in negligence, their claim is that they did not get what they bargained for: a fully functional home without water infiltration problems. All damages are economic losses as the result of a failed product.

¶ 18. The Lindens seem to believe that the predominant purpose test involves weighing numerical amounts of materials and labor involved in a transaction to determine whether the transaction involved

"more products" or "more services." Thus, they produced summary judgment affidavits stating that Cascade and Fern had each provided 85% labor and 15% materials to the project. They also contend that the trial court, having examined the general contract, did not have an adequate factual basis to determine that the predominant purpose was for a product, since no evidence had been submitted breaking down how much of the contract was for labor and how much was for materials.

¶ 19. However, the predominant purpose test is not a fixed mathematic calculation weighing dollars or percentages. Rather, we examine contracts for "their thrust, their purpose." *Biese*, 223 Wis. 2d at 25. We have analyzed the amount and type of billing as a relevant factor to determine the predominant purpose of a contract. *Micro-Managers, Inc. v. Gregory*, 147 Wis. 2d 500, 508, 434 N.W.2d 97 (Ct. App. 1988); *Van Sistine v. Tollard*, 95 Wis. 2d 678, 685, 291 N.W.2d 636 (Ct. App. 1980). We also have analyzed the actual language of the contract to determine whether the language is typical of a service contract or of a contract for the sale of a product. *Van Sistine*, 95 Wis. 2d at 685; *Micro-Managers*, 147 Wis. 2d at 508–09. So, while in *Van Sistine* we noted amounts attributable to materials and labor, we also were persuaded by the language of the contract, framed in terms like: "install," "reposition," "move" and "finishing." *Van Sistine*, 95 Wis. 2d at 685. Likewise in *Micro-Managers*, while we noted that approximately $56,000 of the $60,000 contract was for labor, the contract was again framed in terms of services: "man-days," "development," "time" and "design." *Micro-Managers*, 147 Wis. 2d at 508–09.

¶ 20. We also examine the contract as a whole to determine whether the parties' purpose was to enter into a contract for a product or for services. For example, in *Micro-Managers*, we concluded that a contract for the development of specially designed computer software was predominately for services. We were persuaded by the reasoning in *Data Processing v. L. H. Smith Oil Corp.*, 492 N.E.2d 314 (Ind. App. 1986). *Micro-Managers*, 147 Wis. 2d at 507. The court there noted that while a product, computer software, was generated, the contract was predominately for services. *Data Processing*, 492 N.E.2d at 318–19. The purchaser of the software had bargained for the "specific knowledge, skill and ability" of the software developer. *Id.* Such reliance on the particular skills of a person is typical in service contracts; thus a contract with an artist for a painting is one predominately for services. *Biese*, 223 Wis. 2d at 25.

¶ 21. The Lindens' contract with Groveland does not delineate separate amounts for the labor and materials involved. However, the type of billing is clear. The contract price was not dependent on the actual number of hours spent on construction, but was "a fixed price contract." The price was only subject to change if the specifications for the house changed:

> Any change to specifications that lower cost of project, will be a reduction in cost to client, and any change in specifications that result in a higher cost, will be charged to client.

The type of billing used here is for a product.

¶ 22. The actual language of the contract also is typical of a custom-built product with many specifications. The contract begins, "Here are the specifications for the project as we understand it." The contract

282

contains an itemized list of specifications for the various portions of the house (e.g. foundation, roof) and the price, including labor and materials, for each. The contract delineates the size and type of the components of the house, even including name brands of items such as the windows and shingles. The language of the contract is typical of a product contract.

¶ 23. Finally, the contract as a whole reveals that the parties' purpose was not a service contract. The contract does not include the names of Cascade or Fern, despite the fact that subcontractors would be used was apparent on the face of the contract. The Lindens had not bargained for the specific "knowledge, skill and ability" of Cascade or Fern. In fact, the Lindens did not even know that Fern had worked on their house until he arrived at their house to inquire about this lawsuit. The contract here was predominately for a product and the economic loss doctrine is applicable.

¶ 24. Alternatively, the Lindens argue that they have suffered damage to "other property," making the economic loss doctrine, which bars tort actions for *solely* economic damages, inapplicable.[4] They allege that the problems with the stucco siding and roof have caused damage to other portions of their house, constituting damage to "other property" and removing this dispute from the economic loss doctrine. However, since the roof and siding were incorporated in an integrated

---

[4] The Lindens had initially alleged personal injuries to Dianne Linden, which would have removed this entire dispute from the economic loss doctrine. The economic loss doctrine does not apply to defective product disputes that involve personal injury; economic losses are recoverable in tort in conjunction with non-economic losses. *Wausau Tile*, 226 Wis. 2d at 247. However, the Lindens voluntarily abandoned those personal injury claims.

system—the house—and the Lindens have not claimed damages to any property other than the house, there has been no "other property" damage and the economic loss doctrine is applicable.

¶ 25. The integrated system rule holds that once a part becomes integrated into a completed product or system, the entire product or system ceased to be "other property" for purposes of the economic loss doctrine. *See Wausau Tile*, 226 Wis. 2d at 251–52 (cement is an integral part of concrete paving blocks); *Bay Breeze*, 257 Wis. 2d 511, ¶ 27 (windows are an integral part of a house); *Selzer v. Brunsell Bros.*, 2002 WI App 232, ¶ 39, 257 Wis. 2d 809, 652 N.W.2d 806 (same). As in determining the relevant transaction above, to determine whether "other property" has been damaged, "one must look to the product purchased by the plaintiff, not the product sold by the defendant." *Bay Breeze*, 257 Wis. 2d 205, ¶ 25 (quoting *Casa Clara Condo. Ass'n Inc. v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1247 (Fla. 1993)).

> Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products—dwellings—not the individual components of those dwellings. They bargained for the finished products, not their various components.

*Id.*

¶ 26. We conclude that the "integrated systems exception" applies here. The stucco siding and roof serve no independent purpose other than as part of the

house. Accordingly, they are component parts of the integrated system—the house. Any damage to other portions of the house does not constitute damage to "other property."[5]

## II. WEST BEND'S COVERAGE OF CONTRACT CLAIM

¶ 27. The Lindens next contend that Cascade's insurer, West Bend, should not have been dismissed.[6] They argue that West Bend's policy provides coverage for the contract claim against Cascade. Accordingly, they contend that West Bend should remain a party despite the dismissal of the negligence claims under the economic loss doctrine. However, we conclude that the Lindens invited any error by the trial court.

¶ 28. The Lindens have consistently asserted that West Bend's commercial general liability policy provides coverage for the tort, not contract, claims against Cascade. In their third amended complaint, the Lindens brought claims against West Bend under its policy insuring against Cascade's negligence. In both their initial and revised summary judgment briefs, the Lin-

---

[5] The Lindens again allege that the "component parts" are services and no Wisconsin courts have used the integrated systems exception when the defects claimed are services, not products. Because we conclude that the relevant transaction is for a product, we need not address whether the integrated systems exception could be used for services.

[6] The Lindens also argue that they have a contract claim against Cascade. However, from what we can tell from the record, Cascade was not served with notice of this appeal, nor has it appeared in the appeal. Therefore, we do not address the argument.

dens expressly conceded that the West Bend policy did not provide coverage for their contract claims:

> The West Bend Brief pages 22–23 claim that the a [sic] breach of contract or breach of warranty claim brought by the Lindens against Cascade Stone are excluded from coverage under the West Bend policies. We agree. The Lindens never claimed that West Bend policies insured Cascade against the breaches of contract or warranty.

The Lindens reiterated their concession that there was no coverage of the contract claims under the West Bend policy at the October 27, 2003, motion hearing.

¶ 29. The Lindens now claim that, under *American Family Mutual Insurance Co. v. American Girl, Inc.*, 2004 WI 2, 268 Wis. 2d 16, 673 N.W.2d 65, the trial court erred by finding that the West Bend policy did not cover their contract claims against Cascade. However, the Lindens conceded the issue of coverage of their contract claims in the trial court based on their understanding of the coverage of commercial general liability policies. Thus, if this was error, they invited it. "If a party makes an express concession, the party invites the trial court to rule regarding that concession . . . ." *Richards v. Land Star Group, Inc.*, 224 Wis. 2d 829, 842–43, 593 N.W.2d 103 (1999). We normally will not review invited error and we decline to do so here.[7] *Atkinson v. Mentzel*, 211 Wis. 2d 628, 642–43, 566 N.W.2d 158 (Ct. App. 1997).

---

[7] The Lindens had the opportunity to make the same contract coverage argument that the *American Girl* majority acknowledged. We will not "blindside" the trial court for, essentially, failing to make a ruling it was not requested to make.

## III. MOTION TO AMEND COMPLAINT AGAINST FERN

¶ 30. Finally, the Lindens argue that the circuit court erroneously exercised its discretion when it denied their motion to amend the pleadings pursuant to WIS. STAT. § 802.09(1) (2001–02)[8] to add a contract claim against Fern. "A trial court's decision to grant leave to amend a complaint is discretionary." *Finley v. Culligan*, 201 Wis. 2d 611, 626, 548 N.W.2d 854 (Ct. App. 1996). We will not reverse a court's discretionary decision unless the record discloses that the court failed to exercise its discretion, that the facts do not support the trial court's decision, or that the court applied the wrong legal standard. *See id.* at 626–27. The circuit court "in exercising its discretion must balance the interests of the party benefiting by the amendment and those of the party objecting to the amendment." *State v. Peterson*, 104 Wis. 2d 616, 634, 312 N.W.2d 784 (1981).

¶ 31. A review of the record reveals that the trial court properly exercised its discretion in denying the

---

[8] WISCONSIN STAT. § 802.09(1) reads as follows:

AMENDMENTS. A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires. A party shall plead in response to an amended pleading within 45 days after service of the amended pleading, or within 20 days after the service if the proceeding is to foreclose or otherwise enforce a lien or security interest, unless (a) the court otherwise orders or (b) no responsive pleading is required or permitted under s. 802.01 (1).

amendment. The court considered the facts that the complaint had been pending for three years and that three prior amendments had been made. The court also weighed the possible prejudice to the Lindens in denying the motion to add a contract claim in light of its dismissal of the tort claims.

¶ 32. The Lindens contend the trial court's reasons are factually flawed. They point out that the claim against Fern was only pending for a year and two months, against Fern's insurer for a mere eight months and that neither of those claims have been themselves amended. The Lindens also contend that the interests of justice favor allowing the amendment. They claim the trial court's last minute[9] dismissal of their negligence claims results in prejudice that justifies the need for the late amendment. On the other hand, they assert, Fern would not be prejudiced by the amendment. The Lindens allege that Fern has sufficient time to prepare to defend the contract claim both because the trial was postponed and because no additional preparation is necessary since the substance of the underlying claim remains unchanged.

¶ 33. However, the Lindens did not take any steps to amend the pleadings to add a contract claim against Fern until the trial court dismissed their tort claims, even though: (1) the Lindens made both contract and tort claims against the other subcontractor, Cascade; (2) the applicability of the economic loss doctrine had been contested for eight months; and (3) the Lindens voluntarily abandoned their personal injury claims a month earlier, which made their tort claims vulnerable under the economic loss doctrine. Under these circum-

---

[9] Summary judgment was granted at the pretrial hearing.

stances, the trial court properly exercised its discretion by denying the Lindens' motion to amend the pleadings.

*By the Court.*—Judgment affirmed.