Kelman DOW and Kirsten
Dow, Plaintiffs,

v.

David POLTZER and Patty
Poltzer, Defendants,

v.

State Farm Fire and Casualty
Company, Intervenor /
cross-claimant.

No. 04–C–827.

United States District Court,
E.D. Wisconsin.

April 4, 2005.

Daniel W. Stevens, Stevens & Kroening LLC, Brookfield, WI, for Plaintiffs.

Douglas P. Dehler, The Dehler Law Firm SC, Brookfield, WI, for Defendants.

Vicki L. Arrowood, Emile Banks & Associates LLC, Milwaukee, WI, for Intervenor.

## DECISION AND ORDER ON MOTION TO DISMISS CERTAIN CLAIMS AND REQUEST TO REMAND

CALLAHAN, United States Magistrate Judge.

### I. BACKGROUND

This action was originally filed by the plaintiffs, Kelman and Kirsten Dow ("the Dows"), in the Waukesha County Circuit Court. On September 1, 2004, the defendants, David and Patty Poltzer ("the Poltzers"), removed the action to this court based on diversity of the parties. Thereafter, State Farm Fire and Casualty Company ("State Farm") moved the court for an order allowing it to intervene because the scope of its obligations to the Poltzers under a home owner's insurance policy was at issue. The court granted State Farm's motion to intervene.

The Dows' original complaint, which was filed on July 15, 2004, set forth seven causes of action, all relating to an alleged flaw in the basement of a home which the Dows purchased from the Poltzers. The causes of action can be summarized as follows: (1) breach of warranty; (2) inten-

tional misrepresentation; (3) misrepresentation in violation of Wis. Stat. §§ 895.80 and 943.20(1)(d); (4) misrepresentation in violation of Wis. Stat. § 100.18; (5) misrepresentation on a strict responsibility theory; (6) misrepresentation on a negligence theory; (7) rescission of the sale and restitution (mistakenly titled eighth cause of action).

On January 3, 2005, the Poltzers filed a motion to dismiss Counts Two through Six on the grounds that recovery on those counts is barred by the economic loss doctrine. The Poltzers' motion to dismiss is now fully briefed and is ready for decision.

The Dows filed an affidavit on September 17, 2004, which, although not captioned as a motion for remand, asks the court to remand this matter to the state court. The Poltzers construed the affidavit as a petition for remand and filed a brief in opposition to such. The Dows then filed a letter to the court on September 29, 2004 informing the court that they had filed an amended complaint (presumably in the state court) which omitted their seventh cause of action, that is, the cause of action requesting rescission and restitution. The letter stated "it is my belief that this court no longer has jurisdiction since the controversy has been eliminated from the plaintiff's Complaint." (Letter dated Sept. 29, 2004) The court will therefore address the issue of subject matter jurisdiction at this time as well.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

The defendants removed this matter to this court based on 28 U.S.C. § 1441 ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court ...") and 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States ...").

The Dows are citizens of the State of Wisconsin. (Compl. at 1.) The Poltzers are citizens of the State of Georgia. (Notice of Removal at 2.) State Farm is an Illinois corporation and thus is considered a citizen of the State of Illinois. (Intervenor Compl. for Dec. Relief at 2.) Although for diversity purposes a corporation can be considered to be a citizen of more than one state, no party has suggested that State Farm should be considered a citizen of either Georgia or Wisconsin. Nor has any party otherwise argued that the parties to this action are not "citizens of different States."

The Dows argue, instead, that the amount in controversy is less than $75,000. It is uncontroverted that the house which is the subject of this controversy was purchased from the defendants and by the plaintiffs for $310,500. (Defs.' Br. in Opp'n to Pet. to Remand at 2.) It is also uncontroverted that the original complaint filed in the state court contained a cause of action asking for rescission of the sale of the house and restitution. The Dows' argument is that since they filed an amended complaint withdrawing the request for rescission and restitution, the amount in controversy is now only the cost of repairing the allegedly faulty house, which is a sum less than $75,000.

The court is confident that because the original complaint in this matter prayed for the court to "rescind the sale [and] return all moneys paid by the plaintiffs in purchasing and improving the property ..." (Compl. at 5.), an amount in excess of $310,500, the amount in controversy requirement was met at the time of removal. The only question then is whether the plaintiffs' amended complaint de-

prives this court of subject matter jurisdiction.

■ The plaintiffs filed their amended complaint withdrawing the rescission and restitution count after the matter had already been removed to this court. "Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The Seventh Circuit has interpreted the holding in *St. Paul* to mean that "a plaintiff may not obtain a remand by amending the complaint to seek less than the jurisdictional amount." *In re Shell Oil Co.,* 966 F.2d 1130, 1131 (7th Cir.1992). The court therefore finds that it does have subject matter jurisdiction and the plaintiffs' request that this matter be remanded to the state court will be denied.

## B. Motion to Dismiss

The defendants assert that Counts Two through Six of the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because each count fails to state a claim upon which relief can be granted. In considering a motion to dismiss for failure to state a claim, the court accepts as true the factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiffs. *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995). Dismissal under Rule 12(b)(6) is proper "only where it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief." *Id.* Thus, "[t]he essence of a defendant's Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim." *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999).

"A federal court hearing a case under diversity jurisdiction must apply the substantive law of the state in which it sits." *Jean v. Dugan,* 20 F.3d 255, 260 (7th Cir.1994) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). This includes applying the choice of law rules of that state. *Id.* at 260–61. The parties apparently agree that the laws of the State of Wisconsin govern in the case at bar as no party argues otherwise and each cites to and argues from Wisconsin statutes and cases. The task of this court, therefore, is to determine if, accepting all allegations in the complaint as true and drawing all reasonable inferences, the Dows have stated claims in Counts Two through Six on which relief can be granted under Wisconsin law. On issues of Wisconsin law this court is to look first to the precedent of the Wisconsin Supreme Court, and if there is no case on point, "decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Allstate Ins. Co. v. Tozer,* 392 F.3d 950, 952 (7th Cir. 2004) (internal quotation marks omitted).

The Poltzers' motion to dismiss is based on the "economic loss doctrine." The Wisconsin Supreme Court has defined the doctrine as follows: "The economic loss doctrine is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer, under the tort theories of negligence or strict products liability, damages that are solely 'economic' in nature." *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis.2d 395, 400, 573 N.W.2d 842, 844–45 (Wis.1998).

> Economic loss is generally defined as damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was manufactured and sold. It includes both direct economic loss and

consequential economic loss. The former is loss in value of the product itself; the latter is all other economic losses attributable to the product defect.

*Id.* at 400–01, 573 N.W.2d at 845 (internal quotation marks and citations omitted). The underlying rationale of the economic loss doctrine is to maintain the distinct functions of tort and contract law. *Id.* at 403, 573 N.W.2d at 846.

As the quotation from *Daanen & Janssen* indicates, the economic loss doctrine was originally applied to situations involving a "commercial purchaser of a product." The case at bar, however, concerns the sale of residential real estate. Before examining Counts Two through Six of the complaint individually, the court must decide the overarching question of whether, under Wisconsin law, the economic loss doctrine applies to the sale of real estate in a non-commercial use setting.

The Wisconsin Supreme Court recently decided that the economic loss doctrine can be applied to real estate transactions, but did not decide to what extent.

While we do not decide today whether the broader conceptualization of the economic loss doctrine in *Tietsworth* covers all real estate transactions, we conclude that the economic loss doctrine may not be discarded simply because a transaction involves real estate. In this case, we have a written, bargained-for contract for the sale of commercial-use land between two sophisticated parties represented by counsel during the negotiation process. This is the kind of situation that is tailor made for the application of traditional contract law.

*Van Lare v. Vogt, Inc.*, 274 Wis.2d 631, 642, 683 N.W.2d 46, 51–52 (Wis.2004). Furthermore, the Wisconsin Supreme Court has held that the economic loss doctrine can be applied to consumer transactions. *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis.2d 305, 324, 592 N.W.2d 201, 209 (1999) (holding that the economic loss doctrine applied to the sale of an automobile).

Although the Wisconsin Supreme Court has not directly determined whether the economic loss doctrine applies to real estate transactions in non-commercial use settings, the Wisconsin Court of Appeals has answered the question in the affirmative. In *Linden v. Cascade Stone Co.*, 276 Wis.2d 267, 687 N.W.2d 823 (2004), the plaintiffs were homeowners who brought an action asserting contract and tort claims against sub-contractors who participated in the construction of their home. The court found that the underlying transaction at issue was the sale of a product, i.e., a house, and the economic loss doctrine therefore applied and barred the tort claims. *Id.* at 277, 283, 687 N.W.2d at 826, 829.

In *Linden,* the Lindens were homeowners while the opposing party consisted of two sub-contractors who were engaged in a commercial enterprise. *Id.* at 274, 687 N.W.2d at 825. Both parties to this action, the Dows and the Poltzers, are homeowners. Neither party to the transaction was engaged in a regular commercial enterprise. In this court's opinion, however, that distinction does not afford a reason to apply the economic loss doctrine in the Lindens' case, but not in this case.

It could be argued, in general, that private individuals are in an inferior bargaining position compared to contractors in the construction trade, or that the commercial entities that generally build homes are more sophisticated than private individuals. Thus, because of the imbalance in contract negotiations, private individuals are in need of the protections provided by tort law. The court in *Linden* nevertheless held that the economic loss doctrine applied to bar the Lindens' tort claims.

In the case at bar, the Dows and the Poltzers are in commensurate positions. To reiterate, neither couple is a commercial enterprise or is, to this court's knowledge, in the business of buying or selling homes. Each couple had equal bargaining power in negotiations for the sale of the house, and they were presumably of an equal level of sophistication. Based on this, the arguments for applying the economic loss doctrine are arguably stronger in the case at bar than in *Linden.*

■ The court in *Linden* applied the economic loss doctrine to a non-commercial use real estate transaction. This court can find no reason why the decision in *Linden* should not apply to the case at bar. Therefore, the decision in *Linden* is controlling unless there are "persuasive indications" that the Wisconsin Supreme Court would decide the issue differently. The plaintiff has made no argument in this regard, and because the supreme court has explicitly left the question open, the court does not find "persuasive indications" that it would decide differently. Therefore, as a general matter, the court finds the economic loss doctrine to be applicable to a real estate transaction between non-commercial parties. It then becomes necessary to examine Counts Two through Six individually in order to determine if the economic loss doctrine bars recovery under each.

### Counts Five and Six

Count Five of the complaint alleges misrepresentation on a strict responsibility theory while Count Six alleges misrepresentation on a negligence theory. Once this court has decided, as it has, that under Wisconsin law the economic loss doctrine applies to the sale of residential real estate, it is clear that the Dows cannot recover on strict responsibility or negligent misrepresentation theories. Negligence and strict liability were the tort theories to which the economic loss doctrine was originally applied. *See Daanen & Janssen,* 216 Wis.2d at 400, 573 N.W.2d at 844–45; *Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.,* 148 Wis.2d 910, 921, 437 N.W.2d 213, 217–18 (1989) ("We hold that a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories . . . .").

Indeed, the Dows appear to concede that their negligence claim should be dismissed (Pls.' Br. at 3.), and the only argument they present relating to their strict responsibility claim is based on the non-commercial character of the transaction. (Pls.' Br. at 2.) Given the decision in *Linden,* however, the court concludes that the economic loss doctrine bars recovery on Counts Five and Six of the complaint and such counts will therefore be dismissed.

### Count Two

The second count, which is captioned "Misrepresentation: Intentional," alleges that the defendants made false representations of fact regarding the house "knowing that said representations were untrue, or recklessly, without caring whether they were true or not . . ." and "[t]hat the defendants made these representations, including the failure to disclose material facts, with the intent to deceive and induce the plaintiffs to act upon them, and indeed the plaintiffs did believe such representations to be true and justifiably relied on them, and as a result, purchased the subject property." (Compl. at 2.) Specifically, the plaintiffs allege that the Poltzers stated that there was only slight seepage in northwest corner of the basement during heavy rain, when in fact the water leakage was much worse. (Compl. at 2.)

While the Wisconsin Supreme Court has held that the economic loss doctrine is generally applicable to misrepresentation claims, it has recognized an exception in

the case of fraud in the inducement. *See Tietsworth v. Harley–Davidson, Inc.*, 270 Wis.2d 146, 165–67, 677 N.W.2d 233, 242–43 (2004). However, the contours of the exception are far from clear.

There are three competing views on the proper contours of the fraud in the inducement exception to the economic loss doctrine, and the Wisconsin Supreme Court has grappled with which one to adopt on at least two occasions in recent years. In *Digicorp, Inc. v. Ameritech Corp.*, 262 Wis.2d 32, 662 N.W.2d 652 (2003), the five justices who participated in the decision split three ways. One justice took the view that there should be no fraud in the inducement exception. *Id.* at 64, 662 N.W.2d at 667 (Sykes, J., concurring in part and dissenting in part). Two justices favored upholding *Douglas–Hanson Co. v. BF Goodrich Co.*, 229 Wis.2d 132, 598 N.W.2d 262 (1999), which was the prevailing Wisconsin Court of Appeals case at the time, and which recognized a broad fraud in the inducement exception to the economic loss doctrine. *Digicorp*, 262 Wis.2d at 68–69, 662 N.W.2d at 669 (Bradley, J., dissenting). And two justices took the so-called *Huron Tool* view (based on a Michigan appellate court case by that name), which recognizes a narrow fraud in the inducement exception. *Digicorp*, 262 Wis.2d at 54, 662 N.W.2d at 662.

Under the *Huron Tool* view, if the fraud is "extraneous to" the contract, the exception to the economic loss doctrine would apply (the fraud claim could go forward), but if the fraud is "interwoven" into the contract, the exception would not apply. *Id.* at 55, 662 N.W.2d 652, 662 N.W.2d at 663. If the only misrepresentation by the dishonest party concerned the quality or character of the goods sold, this would not be extraneous and the exception would not apply. *See Id.* at 53, 662 N.W.2d at 662 (citing *Huron Tool and Eng'g Co. v. Precision Consulting Services, Inc.*, 209 Mich.

App. 365, 532 N.W.2d 541, 545 (1995)). The result of the 2–1–2 split in *Digicorp* was that *Douglas–Hanson* and its broad fraud in the inducement exception to the economic loss doctrine was overruled, but no majority of justices agreed as to the proper parameters of the exception.

The Wisconsin Supreme Court considered the question again in *Tietsworth v. Harley–Davidson, supra,* but again did not ultimately resolve the extent of the fraud in the inducement exception. In *Tietsworth*, the plaintiffs had purchased from the defendant motorcycles which were allegedly defective. The court held that "[t]his case does not present an opportunity to determine whether a *Huron Tool*-type cause of action as an exception to the economic loss doctrine would be recognized by a majority of this court. The fraud alleged here plainly pertains to the character and quality of the goods that are the subject matter of the contract." *Tietsworth*, 270 Wis.2d at 167, 677 N.W.2d at 244. In essence, the majority in *Tietsworth* concluded that Wisconsin does not recognize a fraud in the inducement exception to the economic loss doctrine which is *any broader* than the *Huron Tool* view. Therefore, because the claims in *Tietsworth* were outside the narrow contours of a *Huron Tool*-type exception (they were not "extraneous to" the contract), it was unnecessary to define the precise contours of the exception in Wisconsin.

■ Although the Wisconsin Supreme Court did not ultimately define the parameters of the fraud in the inducement exception to the economic loss doctrine in *Tietsworth*, the court's reasoning in that case is fatal to the Dows' intentional misrepresentation claim in the case at bar. Accepting the allegations in the complaint as true, the Dows have only alleged fraud relating directly to the condition of the house which they purchased. The Dows claim that

there is extreme water leakage in the basement of the house and the alleged fraudulent misrepresentation is directly related to that condition. Like in *Tietsworth*, the fraud alleged by the Dows "plainly pertains to the character and quality of the goods that are the subject matter of the contract," in this case, the house. Consequently, even though the parameters of the Wisconsin fraud in the inducement exception to the economic loss doctrine are not clear, it is clear that the exception does not apply to the Dows' intentional misrepresentation claim. The economic loss doctrine is therefore applicable and bars recovery on Count Two of the complaint. The defendants' motion to dismiss that count will accordingly be granted.

*Count Four*

Count Four of the complaint claims that the defendants violated Wis. Stat. § 100.18. Section 100.18 is a rather lengthy statute dealing with deceptive or misleading representations made to promote the sale of various items including real estate, and provides in part:

(1) No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities ... or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities ... shall make, publish, disseminate, circulate, or place before the public ... in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities ... or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Count Four is again premised on the alleged misrepresentation by the Poltzers concerning water leakage in the basement of the house. The complaint does not clearly spell out how the alleged misrepresentations by the Poltzers fit into the statutory language of § 100.18, but merely states that the section was violated. Again, the defendants argue that the count should be dismissed based on the economic loss doctrine.

In *Kailin v. Armstrong*, 252 Wis.2d 676, 709, 643 N.W.2d 132, 149 (2002), the Wisconsin Court of Appeals considered the economic loss doctrine's applicability to claims made under § 100.18. The court plainly stated, "[w]e conclude the economic loss doctrine does not apply to claims under Wis. Stat. § 100.18." *Id.* In arriving at that conclusion, the court reasoned that

[t]he legislature has plainly chosen in § 100.18 to provide protection and remedies for false advertising that do not exist at common law. The underpinnings of the economic loss doctrine— protecting parties' freedom to allocate economic risk by contract, encouraging the purchaser to assume, allocate, or insure against that risk, and maintaining the fundamental distinction between tort and contract law—are either irrelevant to, or inconsistent with, that legislative choice.

*Id.* This court is not aware of a Wisconsin Supreme Court case directly on point, and therefore *Kailin* is controlling unless there are persuasive indications that the supreme court would decide the issue differ-

ently. *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir.2004).

There are no such persuasive indications. A portion of *Kailin* did rely on the *Douglas–Hanson* approach to the fraud in the inducement exception to the economic loss doctrine, an approach that was overruled by the supreme court in *Digicorp. See supra*, p. 937. However, the reasoning of the *Kailin* court on the § 100.18 question was not based on the *Douglas–Hanson* approach to the fraud in the inducement exception. The court instead based its holding on the policy behind the economic loss doctrine and legislative intent. The portion of *Kailin* addressing § 100.18 therefore remains unaffected.

The defendants argue that the Wisconsin Supreme Court would apply the economic loss doctrine to bar claims under § 100.18 "in continuance of its broadening application of the economic loss doctrine . . . ." (Reply at 3.) In light of the disagreement among the justices in *Digicorp, Tietsworth,* and *Van Lare,* this court is not so confident of such an outcome. Moreover, there are indications that the Wisconsin Supreme Court might not decide the issue any differently than the court of appeals decided *Kailin.* In *Tietsworth,* 270 Wis.2d at 168–72, 677 N.W.2d at 244–46, the court analyzed a claim made under § 100.18 alongside a common-law fraud claim. Although the court discussed the economic loss doctrine extensively in its analysis of the fraud claim, it did not make any mention of the doctrine's applicability to § 100.18. Furthermore, in the supreme court's most recent decision regarding the economic loss doctrine, the court stated in dicta that "the economic loss doctrine did not necessarily preclude other claims, e.g., (1) breach of contract; (2) violation of Wis. Stat. § 100.18 (fraudulent representation) . . . ." *Van Lare v. Vogt, Inc.,* 274 Wis.2d 631, 643, 683 N.W.2d 46, 52 (Wis.2004).

The defendants cite to *MBI Acquisition Partners, L.P. v. Chronicle Publ'g Co.,* 301 F.Supp.2d 873 (W.D.Wis.2002), for the proposition that the economic loss doctrine does bar claims under § 100.18. (Defs.' Br. at 5; Reply at 2.) In *MBI Acquisition Partners,* the court did dismiss a § 100.18 claim based on the economic loss doctrine. *MBI Acquisition Partners,* 301 F.Supp.2d at 886. The court did so, however, after discussing the doctrine's applicability to an intentional misrepresentation claim and without any separate discussion of § 100.18. Moreover, *MBI Acquisition Partners* was decided before *Van Lare* was decided. Such being the case, this court does not find the decision in *MBI Acquisition Partners* to be persuasive authority on this particular issue.

In the end, based on the decision of the Wisconsin Court of Appeals in *Kailin,* and for all of the foregoing reasons, the court finds that the defendants' motion to dismiss the plaintiffs' § 100.18 claim based on the economic loss doctrine must be denied.

*Count Three*

Count Three of the complaint again alleges misrepresentation, and claims the protection of Wis. Stat. §§ 895.80 and 943.20(1)(d). Section 895.80 provides specific remedies to "[a]ny person who suffers damage or loss by reason of intentional conduct" which is prohibited by certain other enumerated Wisconsin statutes. Each of the enumerated statutes is criminal in nature. The remedies provided for include actual damages, costs of investigation and litigation, and exemplary damages of up to three times the actual damages. Wis. Stat. §§ 895.80(3)(a), (b), and (c).

One of the violations that can trigger the remedies provided by § 895.80 is theft, as defined by Wis. Stat. § 943.20. The plaintiffs specifically invoke § 943.20(1)(d), which provides that one who "[o]btains title to property of another person by in-

tentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made" may be penalized. As before, the conduct at issue is the alleged misrepresentation about water leakage in the basement.

Neither party has cited any Wisconsin state case that determines the applicability of the economic loss doctrine to Wis. Stat. § 895.80, nor is the court aware of any. The Poltzers again cite to *MBI Acquisition Partners, L.P. v. Chronicle Publ'g Co.*, 301 F.Supp.2d 873 (W.D.Wis.2002), this time for the proposition that the economic loss doctrine bars recovery under Wis. Stat. § 895.80. (Defs.' Br. at 5.) The holding in *MBI Acquisition Partners*, however, did not specifically discuss § 895.80. The plaintiffs cite to no cases on the issue, and indeed, do not even mention § 895.80 in their brief.

Nevertheless, this court finds that its determination regarding the Wisconsin fraud in the inducement exception to the economic loss doctrine is also determinative of this issue. Section 895.80 essentially provides a specific tort remedy for victims of certain crimes against property. Those crimes against property are for the most part nothing more than the criminal equivalent of various torts. In this specific instance, § 943.20(1)(d) simply makes certain instances of fraud in the inducement a criminal offense. Therefore, the effect of §§ 895.80 and 943.20(1)(d) is simply to provide a specific remedy for certain instances of the tort of fraud in the inducement.

This court believes that were the Wisconsin Supreme Court to consider the issue, it would find that tort claims that are barred by the economic loss doctrine are not revived by § 895.80. Indeed, if it were to hold otherwise, the supreme court's holdings regarding the applicability of the economic loss doctrine to fraud in

the inducement claims would be largely meaningless because an aggrieved party could very often circumvent the doctrine via § 895.80. This court believes that the Wisconsin Supreme Court would hold, instead, that § 895.80 claims based on fraud in the inducement are barred by the economic loss doctrine to the same extent that recovery in tort on the underlying fraud in the inducement claim is barred. In this case, because this court has found that the Dows' intentional misrepresentation claim is barred under Wisconsin law by the economic loss doctrine, it finds that their claim based on § 895.80 is likewise barred. Count Three will therefore be dismissed.

The court is aware that this particular holding in some ways is in tension with its previous holding regarding the economic loss doctrine's applicability to claims under § 100.18. However, there are certain considerations present in the § 100.18 question that are not present here. First, while there are indications from Wisconsin Supreme Court precedent that that court might not recognize an economic loss doctrine bar to proceeding under § 100.18, there are no equivalent indications regarding § 895.80. Second, unlike § 100.18, there is no Wisconsin Court of Appeals decision holding that the economic loss doctrine does not apply to § 895.80. And third, the Wisconsin Court of Appeals decided that the economic loss doctrine does not apply to § 100.18 based, at least in part, on its finding that the legislature intended § 100.18 to provide new causes of action not available at common law, and to which the doctrine's policy rationale did not apply. *Kailin*, 252 Wis.2d. at 709, 643 N.W.2d at 149. The same is not true of § 895.80. It appears that § 895.80 simply provides specific remedies for torts which already existed, and to which, in some cases, the economic loss doctrine had already been applied. For these reasons, the court finds that, although under Wis-

consin law the economic loss doctrine does not bar recovery under § 100.18, it does bar recovery under § 895.80, at least under the facts at hand.

## III.   CONCLUSION AND ORDERS

In conclusion and for all of the foregoing reasons, the Dows' request for remand will be denied and the Poltzers' motion to dismiss will be granted in part and denied in part.   Specifically, Counts Two, Three, Five, and Six of the complaint will be dismissed.

**NOW THEREFORE IT IS OR-DERED** that the plaintiffs' request that this case be remanded to state court be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss Counts Two through Six be and hereby is **GRANTED IN PART and DENIED IN PART**;

**IT IS FURTHER ORDERED** that Counts Two, Three, Five, and Six of the complaint be and hereby are **DIS-MISSED**.